The facts are sufficiently stated in the opinion of the Court by Mr.Justice Walker.
This action was brought to recover damages of the defendant for failure to comply with a bid made by the plaintiff at a sale, under a power contained in a mortgage to him. On 9 January, 1905, Richard Harris and wife executed to the defendant, Caleb Harris, a mortgage on land, to secure the payment of a certain indebtedness, with power of sale in case of default by the said Richard Harris in the payment of the debt. On 21 December, 1909, the mortgagor having failed to pay the debt, the defendant advertised the land for (90) sale, under and by virtue of the power vested in him by the deed of mortgage, and on 22 January, 1910, he sold the same through an auctioneer, J. C. Spence, at public outcry, and one Cader Jennings, who was and is solvent, bid the sum of $1,500 for the land and it was struck off to him at the said price. The auctioneer immediately made, on the back of the notice of sale, the following entry: "Sold to Cader Jennings for $1,500, 22 January, 1910." After the sale had been completed and after the bidders had dispersed, the said Jennings refused to comply with his bid, and stated to the auctioneer, in the presence of the defendant, that he was bidding for Elijah Harrell; that he did not want the land himself, and that he would have to sell it again. Under the advice of a friend, the auctioneer sold the land again on the same day, after the bidders had dispersed, the defendant being present at the sale, and also the said Cader Jennings, and the plaintiff became the purchaser at the price of $1,175, there being only a few persons at the sale and no new advertisement of the sale having been made. The defendant refused to make title to the plaintiff, and executed a deed for the land to Cader Jennings, who, in the meantime, had agreed to abide by his *Page 74 
purchase. Out of the money paid by Jennings, the defendant retained a sufficient amount to pay his debt and expenses of sale, and paid the balance over to the mortgagor, whose consent was never given to the second sale. The plaintiff now sues to recover the difference between the real value of the land, that is, $1,500, the amount bid by Jennings, and the amount bid by himself at the second sale. When the plaintiff bought at the second sale the auctioneer made the same kind of entry on the notice as he had done when Jennings bid, that is, an entry to the effect that he had sold the land to the plaintiff on the said day for the sum of $1,175.
At the close of the evidence for the plaintiff, the defendant demurred thereto and moved to dismiss, or for judgment as of nonsuit, under the statute. The motion was allowed. Judgment was entered for the defendant and the plaintiff appealed.
We are of the opinion that the judge correctly decided the case. When a sale is made at auction, the auctioneer is the agent both of the (91) vendor and the vendee. It has been said that, until the fall of the hammer, he is the agent of the vendor, but when the property is struck off to the purchaser by the auctioneer he then becomes the agent of the vendee. The vendor employes the auctioneer to make the memorandum of sale, and the buyer, by bidding, sanctions the authority of the officer to do so. He, therefore, has the power to sign the memorandum, so as to bind the vendee to the terms of the sale. I Reed Statute of Frauds, secs. 315 and 316, and cases cited in the notes. The principle is recognized in Mayer v. Adrian, 77 N.C. 83, where it was assumed that the auctioneer has the right to sign the memorandum for the vendee, though in that case it was held that the memorandum was not sufficient, as it was not physically attached to the written notice or offer of sale, nor did it in any way refer to that paper, so as to constitute, with it, a complete memorandum, showing the names of the parties and the terms of the contract of sale. See, also, Gwathmey v. Cason,74 N.C. 5, where it is said that an auctioneer is authorized by the bidder to sign his name to the memorandum or contract of sale. It is not necessary that the vendee's name should be subscribed to the memorandum, but it is sufficient if it appears in the body of the instrument and the intention is manifested thereby to bind the vendee by the instrument. Smith on Contracts (7 Ed.), at marg. p. 93, states the law very clearly in regard to this matter when he says: "There is a third point common to all the five contracts mentioned in the 4th section; it is with regard to the signature. The words are, you will recollect, `signedby the party to be charged therewith, or some other person thereunto by him lawfully authorized.' The signature, it is obvious, is most regularly and properly placed at the foot or end of the instrument signed; but it *Page 75 
is decided in many cases that although the signature be in the middle or beginning of the instrument, it is as binding as if at the foot; although, if not signed regularly at the foot, there is always a question whether the party meant to be bound by it as it stood, or whether it was left so unsigned because he refused to complete it. But when it is ascertained that he meant to be bound by it as a complete contract, the statute is satisfied, there being a note in (92) writing showing the terms of the contract, and signed by him. Therefore, where in the case of the sale of a quantity of cotton yarn a bill of parcels was sent by the seller to the purchaser, headed: `London, 24 October, 1812. Messrs. John Schneider Co., bought of Thomas Norris Co., agents, cotton yarn and piece goods. No. 3, Freeman's Court, Cornhill.' Following this was a list of the articles sold, the particulars, quantities, and prices. It was held, in an action for not delivering the yarn, to contain a sufficient memorandum to satisfy the requirement of the statute as to the signature of the party to be charged. In this case the whole of the heading of the bill of parcels was printed, except the words, `Messrs. John Schneider Co.' But as it was then given out to the other contracting party by the party to be charged, recognizing the printed name as much as if he had subscribed his mark to it, he had recognized and avowed it as his signature." The auctioneer's memorandum in this case was made at the very time of the sale and was written on the notice, and this was sufficient to make a complete contract of sale, the memorandum being physically attached to the notice, or so connected with it as to constitute a sufficient reference to it and so that they may be read together as parts of one and the same paper, the latter being an offer to sell the property (describing it), and the memorandum on the notice being an acceptance of the offer upon the terms contained therein.
In Proctor v. Finley, 119 N.C. 536, this Court held that advertising a sale of land at auction is an offer to sell at the highest bid, and the person who makes the last and highest bid thereby accepts the offer and the sale is complete, the auctioneer being the agent of the vendor to sell the land, and of the bidder to complete the sale by making and signing a proper memorandum thereof, and that the statute of frauds, as adopted in this State, does not require that the name or signature of the bidder should be subscribed to the memorandum, but the latter may be in any form which indicates that he has accepted the offer and agrees to be bound by the contract of sale. The name of the bidder and the price, in that case, were written on the side of the notice, and this was held to be a good memorandum, citing Gwathmey v. Cason, (93)74 N.C. 5, and Mayer v. Adrain, 77 N.C. 83; Brown on Statute of Frauds, sec. 369; 3 A. E. Enc., 848 and 849. The *Page 76 
rule is thus stated in 29 A. E. Enc., 856: "When the statute requires the memorandum to be `signed,' it is immaterial in what part of the instrument the name of the party appears, whether at the top, in the middle, or at the bottom thereof, if applicable to the whole substance of the agreement, and written by the party, or by his authority, with the intention of thereby executing the same as a binding obligation. A printed name upon a paper which is delivered under circumstances showing an intention to regard the printed name as the person's own, will suffice, as will an entry in a book containing the owner's name at the top of the page. When the statute requires that the memorandum be `subscribed,' the signing must be a literal one at the end of the instrument. It is not necessary that the signature should be a part of the agreement itself. It is sufficient if it be indorsed upon it as a notification of the assent of the party, or if it be written in a letter or memorandum which refers to the agreement. The statute does not require that both parties shall sign one paper containing the contract. The subscription may be upon separate papers, as where counterpart memoranda are made and signed by the respective parties, or where an offer in writing is followed by a written acceptance of the same."
Dickerson v. Simmons, 141 N.C. 325 (opinion by Justice Brown,) is distinguishable. There no sufficient memorandum referring to the written notice or offer of sale was made, but the principle herein stated was fully recognized. In our case the entry on the notice was equivalent to an acceptance of the offer of sale at the price, and as much so as if the acceptance had been expressed in explicit terms and signed by the auctioneer as agent for the vendee. It is just as indicative of his purpose to buy upon the terms of the offer and at the amount of the bid as was the entry in the Proctor case, if not more so. But if the first memorandum had not been sufficient, the plaintiff cannot profit by the (94) defect, as his memorandum is identical with it, and he therefore acquired no right, under the statute, by his bid and the entry of the auctioneer upon the notice of sale, to call for a deed.
As both parties signed the memorandum in this case, the mortgagee having signed the notice which was witnessed by the auctioneer and the defendant having, within the meaning of the statute, signed the memorandum by his agent duly authorized, it is unnecessary to decide another question in regard to what is a sufficient signing of the memorandum. The statute says it must be "signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized." Commenting on this part of the statute, Smith on Contracts, at marg. p. 96, says: "The signature is to be that of the party to be charged; and, therefore, though, as I have pointed out to you, both sides of the agreement must appear in the writing, it is not necessary that it should be *Page 77 
signed by both the parties; it is sufficient if the party suing on it is able to produce a writing signed by the party whom he is seeking to charge. And such a writing signed is sufficient to satisfy the 4th section, though it be only a proposal accepted by parol by the party to whom it is made. The person, however, who seeks to enforce the agreement has not the other altogether at his mercy, but must either do, or be ready to do, his own part of the agreement, before he can seek performance on the part of the person who has signed. Davis v. Martin, 146 N.C. 281; Love v. Atkinson,131 N.C. 544.
But while the memorandum was sufficient within the statute of frauds, the sale to the plaintiff by the defendant and the auctioneer was invalid. If the purchaser at an auction sale is unable or refuses to comply with his bid before the bidders disperse, the property may be sold without a fresh advertisement, or the property may be afterwards sold if it has been newly advertised.
Discussing this subject, it is said in 27 Cyc., at p. 1486, that the bidder is liable for the amount of his bid, which may be recovered in a proper suit against him, or, if he is unable to comply with his bid, the property may be put up for sale a second time. This may be done immediately, if the purchaser's refusal or inability is clearly manifested, and the necessity of advertising a second time or (95) giving new notices may be avoided if the resale is made on the spot and before the bidders disperse, although otherwise there must be a new publication and evidence of the trustee's or mortgagee's continuing authority to make the sale. It is no valid objection to such a resale that the property did not bring as much as at the first sale.
In Barnhardt v. Duncan, 38 Mo., 170, the very question we have here was presented. The bidder had refused, after the sale, to accept the deed because it did not contain covenants of warranty; and with reference to this, the Court said: "Upon the refusal to accept it, the trustee proceeded at once to put up the property for sale again, at the same place, on the same day, without readvertising or any new notice, and, few persons being present, the property was resold for $25. This proceeding can neither be justified nor sustained. It was, in practical effect, a sale without notice. The sale, as advertised, had taken place several hours before, and all bidders had departed. Though yet within the hours mentioned in the advertisement, it cannot be considered a fair and valid sale pursuant to notice. There should have been a new publication of notice for another day." It was so held in the case of Dover v. Kennerly, 38 Mo., 469, the following being the headnote, which fairly states the substance of the opinion: "Where property offered for sale at auction by a trustee in a deed of trust is knocked down to the highest bidder, the sale may be enforced in equity in a suit for a specific *Page 78 
performance, or the bidder may be held liable at law for the damages sustained. When the purchaser to whom the property is struck off at a trustee's sale at auction fails to complete his purchase, the property must be readvertised for sale." McClung v. Trust Co., 137 Mo., 106.
In this case it appears that the second sale was made after the bidders had dispersed and without any new advertisement. The trustee and auctioneer had no power or authority from the mortgagor to release the first bidder and sell to the second bidder for a less price. The mortgagor was vitally interested in this transaction, as if we should hold that the second sale was vaild [valid], he would lose $325. Jenning was (96) bound by his bid, and as we have seen, it could have been enforced against him by a suit in equity, now a civil action.
We hold the second sale, which was made to the plaintiff, to be invalid, for the reasons stated, and as the mortgagee has made a deed to Jennings in accordance with his bid, for the full amount of $1,500 and as the mortgagor has assented to the execution of this deed by receiving the balance of the purchase money, after paying the debts, costs, and expenses, we think Jennings must be declared to be the owner of the land, and the plaintiff is not entitled to recover against the mortgagor, who is the defendant in this action, the difference between his bid and the real value of the land, according to his contention. It can make no difference, so far as he is concerned, whether Jennings acquired title to the land under his bid and the subsequent deed from the mortgagee, for it is sufficient to decide that the plaintiff acquired not right or title by virtue of his bid at the second sale, as the mortgagee had no power or authority to sell to him.
The plaintiff cannot recover upon the ground that the mortgagee assumed to exercise a power to sell which he did not have and that he was thereby misled or deceived to his injury, for the simple reason that he bought with full knowledge of all the facts, and as he is presumed to know the law, he was fixed with notice of the fact that the mortgagee did not have the power to sell under the circumstances, and, therefore, he was in no sense defrauded.
In Leroy v. Jacobosky, 136 N.C. 443; Justice Connor, quoting from Reinhardt on Agency, sec. 308, and other authorities, says: "If the party with whom the agent has contracted knew that the agent had no authority, or was cognizant of all the facts upon which the assumption of authority was based — as, for example, when both parties labored under a mistake of law with reference to the liability of the principal — the agent is not liable either in tort or upon the contract.' Newport v. Smith,61 Minn. 277; Baltzen v. McClay, 53 N.Y. 467. In Michael v. Jones,84 Mo., 578, the Justice writing for the Court says: `But I am satisfied that under the best considered modern decisions the *Page 79 
principle invoked by the plaintiff cannot be carried to such an (97) extent. The true rule, I think, is that as to the liability of the principal, the fact that the principal cannot be held is no ground for charging the agent with liability.' Ruffin, J., in Fowle v. Kerchner, says: `The general rule is that whenever a party assumes to act as agent for another, if he has no authority, or if he exceeds his authority, he will be held to be personally liable to the party with whom he deals, for the reason that by holding himself out as having authority, he misleads the other party into making the agreement. But the rule is founded upon the supposition . . . . that the want of authority is unknown to the other party, or, if known, that the agent undertakes to guarantee a ratification of the act, and when this want of authority is known, and it is clear that the agent did not undertake to guarantee a ratification, it results that the agent is not personally bound.'"
In this case, as we have indicated, the plaintiff had full notice of the situation, and will be held, therefore, to have known all the facts, and it is clear that the mortgagee did not undertake to guarantee a ratification by the mortgagor, so that the essential elements of a warranty as to the authority of the defendant to sell to him is lacking, and he cannot justly claim to have been deceived or defrauded. There is, therefore,
No error.