Jay U. KIRKMAN, Individually and dba
Hotel Operating Company of Ama-
rillo, Appellant,

v.

AMARILLO SAVINGS ASS'N OF AMARIL-
LO and Joe Bob Brown, Trustee,
Appellees.

No. 8255.

Court of Civil Appeals of Texas,
Amarillo.

June 30, 1972.

Rehearing Denied July 31, 1972.

Jay U. Kirkman, Amarillo, for appellant.

Stokes, Carnahan & Fields (O. P. Fields, Jr.), Amarillo, for appellees.

ELLIS, Chief Justice.

This is an appeal from a judgment confirming a mortgagee's title to real property acquired at a foreclosure sale under a deed of trust and denying plaintiff-appellant's claims for recovery founded upon the trustee's rejection of his bid submitted on a conditional basis. Affirmed.

Jay U. Kirkman, d/b/a Hotel Operating Company of Amarillo, appellant herein, instituted suit against Amarillo Savings Association, and Joe Bob Brown, substitute trustee, appellees herein, seeking to establish appellant's right, title and interest in and to real property designated as the Capitol Hotel property in Amarillo, Texas, allegedly acquired by virtue of his bid submitted at a foreclosure sale, along with certain claims for special and exemplary damages.

In his first amended petition, Kirkman alleged the execution and delivery of the deed of trust note and the deed of trust involved in this litigation. He further alleged that after default had occurred in the payment of such note, which was secured by the deed of trust upon the Capitol Hotel property in favor of Amarillo Savings Association, all as set out and identified in his petition, the substitute trustee, Joe Bob Brown, proceeded to conduct the foreclosure sale on March 2, 1971. Kirkman bases his cause of action upon the contention that, at the foreclosure sale, he was the high and successful bidder upon the oral and written bid of $175,000 he made subject to the federal tax lien in the sum of approximately $20,000 and the redemption period provided by law. Also, Kirkman alleged that by reason of a prior agreement between the mortgagor and mortgagee in January, 1971, Amarillo Savings Association had waived all its rights as mortgagee in connection with the foreclosure sale of the property or the terms thereof. He further pleaded that the mortgagee's representatives were in attendance from the beginning to the conclusion of the sale and made no protest concerning the appellant's bid submitted to the substitute trustee or the conditions contained therein. Also, he asserts that the mortgagee has, in effect, waived any objections to such bid and is therefore estopped to complain regarding the same. Additionally, Kirkman contends that the substitute trustee's subsequent acceptance during the day of the sale of the mortgagee's bid of $173,769.76, and the execution and delivery of the substitute trustee's deed to the mortgagee, constituted a deliberate, malicious and wanton attempt on the part of such trustee and mortgagee to vitiate the prior sale to appellant pursuant to his conditional bid submitted at approximately 11:15 a. m. By reason of this alleged conduct on appellees' part, the appellant sought exemplary damages in the sum of $385,000.

The appellant prayed that the substitute trustee be required to deliver an executory contract upon the terms of appellant's conditional bid, and for damages flowing from the breach of the contract, special damages resulting from slander of appellant's title, as well as damages for the value of the property in excess of the appellant's bid. Additionally, he prayed for exemplary

damages, the quieting of title in appellant and removal of cloud cast upon his title by reason of claims of the appellees and instruments of record.

The first amended answer of appellees was filed on May 21, 1971, and, as a part of such pleading, Amarillo Savings Association brought a cross-action against Kirkman seeking a judicial declaration that title to the property in question was vested in such association free and clear of any claims or interest of the appellant and for removal of cloud upon the title which may have been cast because of Kirkman's claims and suit. Kirkman answered the cross-action by general and special denials and affirmative defenses. Also, on May 21, 1971, the appellees filed their motion for summary judgment, alleging that the pleadings, attached affidavit and various interrogatories and answers thereto on file show that there is no genuine issue as to any material fact. Attached to and made a part of the motion for summary judgment was the affidavit of Joe Bob Brown, the substitute trustee. A copy of the deed of trust and the notice of sale, each setting out that sale of the property was to be made to the highest bidder for cash, were attached to and made a part of Brown's affidavit. Kirkman then filed a motion for refusal of the application for summary judgment along with exceptions to the motion and his controverting affidavit. The record also contains interrogatories and answers thereto by Kirkman, Tommy G. Lane, vice-president of Amarillo Savings Association and Joe Bob Brown, the substitute trustee. On June 9, 1971, the appellees filed their second amended answer, pleading, along with the cross-action of Amarillo Savings Association and other matters, that the claims alleged by Kirkman regarding the conditional nature of his bid were in violation of the Statute of Frauds.

Kirkman appeared at the hearing on the motion for summary judgment on June 10, 1971, but complained that since he was served with the cross-action on May 21, 1971, his answer thereto was not due and requested that the court not consider the motion for summary judgment as to the cross-action. The court granted such request and considered the motion for summary judgment only as to appellant's claims and appellees' defenses. On July 2, 1971, the court advised the attorneys of record by letter that the decision had been reached to grant the appellees' motion for summary judgment and to deny the appellant's claims for recovery in his suit.

On July 7, 1971, the cross-action of Amarillo Savings Association was heard on its merits before the court without a jury. Kirkman appeared at the hearing and announced ready for trial. In this hearing, Amarillo Savings Association, as cross-plaintiff, presented the testimony of two witnesses, the president of Amarillo Savings Association, and the substitute trustee who had conducted the foreclosure sale. Also, Amarillo Savings Association introduced and the court admitted into evidence, over Kirkman's objections, seven exhibits, including copies of the deed of trust note, the executed deed of trust, the instrument evidencing the appointment of the substitute trustee, notice of the trustee's sale, affidavit of the substitute trustee regarding posting notices of sale, the substitute trustee's deed to the mortgagee, and Kirkman's written statement of his conditional bid. The cross-plaintiff also introduced into evidence an interrogatory previously propounded to Kirkman and his reply to the effect that on March 2, 1971, he (Kirkman) did not have in his possession nor accessible to him $175,000 in cash. The cross-defendant, Kirkman, offered no evidence during the trial of the cross-action. After the hearing of the evidence, the court rendered judgment for Amarillo Savings Association, vesting fee simple title to the Capitol Hotel property in it, free and clear of any interest of Jay U. Kirkman and removing any cloud on the title to the property cast by Kirkman's claim and suit. The judgment was entered on July 9, 1971, and incorporated therein the court's

adjudication with respect to both the summary judgment and the cross-action. From this judgment Kirkman has perfected his appeal.

The evidence shows that after default in the payment of the indebtedness, the mortgagee exercised its option to sell the Capitol Hotel property at public sale pursuant to the terms of the deed of trust. Joe Bob Brown, who had been appointed as substitute trustee, posted notices relative to the sale of the property. The sale was set for March 2, 1971, between the hours of 10 a. m. and 4 p. m. On such date, at 11:10 a. m., the substitute trustee opened the bidding. The first bid was that of Jay U. Kirkman, who orally and in writing submitted the following bid:

"March 2, 1971

"I am authorized to bid $175,000.00, subject to Federal Tax liens and the redemption period.

s/ Jay U. Kirkman
Jay U. Kirkman, Attorney and authorized agent for Hotel Operating Company of Amarillo"

A federal tax lien in the sum of approximately $20,000 was affixed and filed against the Capitol Hotel property more than 30 days prior to February 1, 1971, the date of the posting of the notices of the deed of trust sale. In addition to the above described bid by Kirkman there was one other bid—a bid by Mr. Garland Sell, an attorney, who bid the sum of $173,795.-76, the amount due on the note, on behalf of the mortgagee, Amarillo Savings Association. The substitute trustee testified that after receiving the two bids above mentioned, he determined there were no other bids and then asked Kirkman where his money was. Kirkman replied that he had some money in a bank in Dallas and that he would need some time to get his money. Also, the substitute trustee stated that before selling the property, he postponed the sale until 2 p. m. to give Mr.

Kirkman the opportunity to secure the money. On cross examination of the substitute trustee by Mr. Kirkman, we note that the substitute trusee's response appears to be significant:

"Q. Now, why didn't you accept the bid of Amarillo Savings at the first sale if you stated that you asked me where my one hundred seventy-five thousand dollars was?

"A. Because it is my understanding of the law, if some one bids on a piece of property and they are a successful bidder and they indicate they can get a certain amount of money together;

"Then you need to give them a period of time during the day of the sale to see if they can get their money together.

"That is why I did not accept it at that time."

The sale was adjourned at approximately 11:15 a. m. and reconvened at 2 p. m. The substitute trustee stated that Kirkman was personally present at the time of his reconvening the sale, and that he then asked him to produce the money. The substitute trustee unequivocally testified that Mr. Kirkman never tendered him any money whatsoever on his bid of $175,000. The record shows that there was some discussion between Kirkman and the substitute trustee concerning Kirkman's claim that he understood that he was to deposit some amount of earnest or "good faith" money instead of the full amount of the $175,000, but the substitute trustee tesified to the effect that there was never a meeting of minds or agreement along that line, and that he accepted what he considered to be the highest and best bid in accordance with the terms of the notice that he read prior to receiving bids. Also, there had been some discussion concerning Mr. Kirkman's having a paper in his hand which purported to be a certificate of deposit with Amarillo Savings Association for the amount of $10,000, but the substitute trustee denied that he had seen any certificate

of deposit and stated that no sum of money was ever tendered to him by Mr. Kirkman. The trustee further stated that he never considered that he had accepted Kirkman's conditional bid, or had agreed to accept any sort of "good faith" deposit in connection with the foreclosure sale. On cross examination, when questioned by Kirkman concerning his interpretation of Kirkman's bid, the substitute trustee testified that the way he inerpreted Kirkman's bid was that he (Kirkman) would pay the one hundred seventy-five thousand dollars, and then if the Federal Government elected to redeem the property, the government would redeem it and pay Mr. Kirkman what he had bid for it. The substitute trustee further testified that following the postponement of the sale, and upon Kirkman's failure to tender, in cash, the bid price of $175,000, he accepted the bid submitted by the mortgagee's representative and announced that the property was sold to Amarillo Savings Association for the sum of $173,769.76. He then executed and delivered the trustee's deed to Amarillo Savings Association on the bid made in its behalf.

■ The trustee's posted notice recited that the real estate would be sold at the door of the County Courthouse in Potter County, Texas, to the highest bidder for *cash*. This notice was in accordance with the deed of trust which recited that in the event of default in the payment of the indebtedness secured thereby, the holder could at his option request the trustee to sell the property "at public venue to the highest bidder for cash." It is further noted that the deed of trust provided that the recitals contained "in the conveyance to the purchaser . . . shall be full and conclusive evidence of the truth of the matters therein stated and all prerequisites to said sale shall be presumed to have been performed. . . ." The execution of the substitute trustee's deed was proved by the testimony of the substitute trustee, and the instrument was duly admitted into evidence. The trustee's deed contained fac-

tual recitations of the default and of the various steps taken in the foreclosure all in accordance with the procedural steps set forth in the deed of trust, and such recitals are presumed to be correct, unless rebutted by competent evidence. See Criswell v. Southwestern Fidelity Life Insurance Co., 373 S.W.2d 893 (Tex.Civ.App.—Houston 1963, no writ) and cases cited therein. The appellant submitted no evidence to rebut such presumption.

■ The appellant has presented 38 points of error, and appellees have responded by 3 counterpoints directed to the correctness of the judgment rendered by the court. An examination of the brief submitted by the appellant discloses that each of the various points raised by the appellant tends to be multifarious, repetitious and argumentative rather than specific assignments of error submitted in the manner contemplated by Rule 418, Texas Rules of Civil Procedure. We have determined, therefore, not to consider each of the various 38 points and subdivisions thereof separately. An overview of the matters raised in this appeal indicates that points 1 through 9, inclusively, and the various subdivisions thereof, relate primarily to the court's action in granting the appellees' motion for summary judgment, while points 10 through 38, inclusively, and the various subdivisions thereof, deal with the alleged incorrectness of that portion of the judgment sustaining the claims of the appellees in their cross-action and declaring the title to the Capitol Hotel property to be vested in Amarillo Savings Association and removing any cloud upon title cast by appellant's claim of interest therein.

Pursuant to appellant's request, the trial court duly filed its findings of fact and conclusions of law. The court found that the foreclosure proceedings had under the deed of trust were regular and sufficient; that the property was offered for sale to the highest bidder for cash; that appellant Kirkman submitted a bid in the sum of $175,000, subject to Federal Tax Liens and the redemption period; that such bid

was an offer by appellant Kirkman to pay $175,000 for the property and to take the title subject to the Federal Tax Lien and the right of the government to redeem the property by refunding his consideration within the statutory period and there was no higher bid; that the bids were called for at 11 a. m. on the date of the sale, and upon appellant Kirkman's making of his conditional bid, the substitute trustee inquired of him if he had his money and Kirkman did not have with or accessible to him the bid price of $175,000; that the sale was adjourned until 2 p. m. on the same day for the purpose of giving Kirkman an opportunity to produce the purchase price, and when the sale reconvened at 2 p. m. on the same day of the sale, Kirkman did not have with nor accessible to him the $175,000 bid price, and he did not tender such purchase money to the trustee in whole or in part and offered the trustee no evidence that he had any ability at all to pay same or any part thereof; that Kirkman never at any time from the day of the sale to July 7, 1971, the day of the hearing on the cross action, tendered to the trustee or to Amarillo Savings Association all or any part of his bid price and was unwilling or unable to pay such bid price or any part thereof.

It is well established that the trier of the facts is entitled to consider all aspects of the weight and credibility of the evidence admitted. The record has been carefully reviewed, and we have concluded that there is sufficient admissible evidence in this case to support the court's factual findings. Additionally, it is noted that, although Kirkman offered no evidence in support of his claim to the property, the record indicates that Kirkman purports to claim some interest to the real property in question based upon an offer to pay 5 per cent of the purchase price as good faith money. There is no evidence in the record of any additional terms of the proposed credit transaction, and there is no instrument in writing between the parties concerning any credit arrangement.

 Although the appellant's conditional bid was written, it is apparent that the evidence does not support the existence of a written agreement between the appellant and the substitute trustee for a credit transaction involving the sale of the property under the foreclosure. It is our opinion that any attempt on the part of the appellant to enforce a sale of this real estate on the credit or upon any terms not evidenced by sufficient instrument in writing is violative of the Statute of Frauds, Article 26.01, Texas Business and Commerce Code, V.A.T.S. (encompassing the same provisions formerly contained in Article 3995a Vernon's Annotated Texas Statutes), requiring that such agreement shall be in writing signed by the party or parties sought to be charged upon "a contract for the sale of real estate." It has been held that the statute of frauds applies to trustee's foreclosure sales. In Coffman v. Brannen, 50 S.W.2d 913 (Tex.Civ.App.—Amarillo 1932, no writ) the applicable rule was set forth in the following language by the court:

"According to the record the attempted sale by the trustee . . . is a nullity, because of a failure to comply with the requirements of the statute of frauds. The statute of frauds applies to sales . . . in mortgages. Rugely v. Moore, 23 Tex.Civ.App. 10, 54 S.W. 379; Dawson v. Miller, 20 Tex. 171, 70 Am.Dec. 380; Brock v. Jones, 8 Tex. 78."

See also, 37 C.J.S. Frauds, Statute of § 118, p. 611, (1943) and Campdera v. Reed, 131 S.W.2d 297 (Tex.Civ.App.—Galveston 1939, writ ref'd).

 In the instant case, the court found that Kirkman, as a bidder at the trustee's sale, never tendered the amount of his bid. We find no case in which a bidder attempted to claim any interest in the property forclosed upon without tendering in cash the amount of the bid. In the case of Campdera v. Reed, supra, it was held that a vendee out of possession at a trustee's

foreclosure sale is in no position to recover against a vendor in possession (or his successor in interest) when the vendee has not paid the purchase money due even though the debt may be barred by the statute of limitations. It is obvious that the appellant in the instant case should be in no better position with respect to his claims than that of the vendee mentioned in the Campdera case. In the case of Moore v. Owsley, 37 Tex. 603, 605 (1872), the court stated:

" . . . We understand the law governing sales at public auction to be, where the sale is advertised to be on specific and restricted terms, any bid made at that sale, not in strict conformity with the terms advertised, is no bid at all, and the crier is not bound to notice the same."

Appellant cites the holding by the Texas Supreme Court in the case of First Federal Savings & Loan Ass'n. of Dallas v. Sharp, 347 S.W.2d 337 (Tex.Civ.App.—Dallas 1961, aff'd), 359 S.W.2d 902 (Tex.Sup. 1962), to sustain his position that the tender of cash was not required in the instant case. The Sharp case involved a situation in which the trustee's sale was attended by representatives of the mortgagee and by an attorney for a stranger to the title. The mortgagee made its bid, but the attorney made a higher one and then offered a personal check instead of cash when he was requested to comply with his bid. The trustee refused the check and the attorney offered to go to a bank located within two blocks and secure the cash from a lock box and return in about five minutes. This offer was rejected and the trustee sold the property to the mortgagee for the lower bid which the trustee regarded as the highest cash bid for the property. The court sustained the attorney-bidder's contention, and, among other matters, stated in the majority opinion:

"The findings of the jury were that either Hamilton or Sharp would have produced the cash within a reasonable time, which was defined to mean 'such time under all of the circumstances a man of reasonable prudence and diligence would have needed to perform the act contemplated.' It is the opinion of this court that 'reasonable time' should be limited to a reasonable time *during the hours of the sale.* . . . It is our opinion that in this case 'reasonable time' means before 4:00 p. m. *on the day of the sale.*" (emphasis ours)

\* \* \* \* \* \*

" . . . In fairness to the mortgagor the trustee, who was the mortgagor's agent, should have made a reasonable effort to determine whether the bid made by Mr. Hamilton was a cash bid. He not only made no effort, but refused the bidder's offer to satisfy him in this respect."

■ In the instant case, the proceedings were recessed from about 11:15 a. m. to 2 p. m. to permit the bidder to secure the cash for his bid. There was not even an indication, much less any evidence, that by a further delay in the proceedings Kirkman would or could have produced the cash during the remainder of the prescribed time on the day of the sale. We do not construe the Sharp case to hold that anything other than *cash* paid on the day of the sale would suffice. Certainly, this case does not sustain a "sale" on a credit basis or deferred payment plan beyond the day of the sale, but only holds that, under the circumstances, the trustee should have allowed a "reasonable time" for the bidder to produce the cash, but within the prescribed hours of the sale—i. e., a reasonable time before 4 p. m. on the day of the sale.

■ The appellant contends, also, that since the substitute trustee did not have in his possession a substitute trustee's deed prepared for delivery concurrently with the submission of the bid, he was not required to deliver the cash amount of his bid until the sale was consummated. As we interpret the appellant's argument, he takes the

position that a bidder is not required to produce cash until the precise moment that legal title to the property passes by the execution and delivery of the substitute trustee's deed and that a substitute trustee not having such deed in his possession may neither demand nor expect the bidder to produce his cash. It has been held that where a foreclosure sale is held in accordance with the terms of the mortgage, i. e., a sale for *cash*, the purchaser obtains equitable title pending execution and delivery of the deed, although no deed is delivered at the time of the payment of the bid price. Pioneer Building & Loan Ass'n. v. Cowan, 123 S.W.2d 726 (Tex.Civ.App.—Waco 1938, writ dism'd jdgmt cor.). Since the evidence clearly discloses that, on the occasion in question, the substitute trustee could secure and deliver a deed within a very short period of time upon being satisfied that Kirkman was in a position to pay the amount of his bid in cash as required by the notice of sale and provisions of the deed of trust, we find no merit in appellant's contention that the full cash payment was not required under the circumstances in order for him to prevail in his claim to the property.

■ In view of the foregoing, it is our opinion that the judgment of the trial court is correct in confirming title to the property in the mortgagee and removing any cloud cast thereon by appellant's claims and suit for the primary reason that Kirkman's bid at the foreclosure sale was not a bid of which cognizance was required. Therefore, the substitute trustee was authorized, under the circumstances, to accept the bid of the mortgagee as the highest bid for cash and to execute and deliver the deed to such purchaser. It is our further opinion that the appellant is not legally entiled to rely upon his alleged acquisition of title to the real estate in question under his bid at a public sale "for cash" when, in fact, he has not tendered or paid the amount of his bid in accordance with the terms of the notice of sale and the provisions of the deed of trust. Addi-

tionally, any claim of right on appellant's part to enforce a sale of the real estate not evidenced by a sufficient instrument in writing signed by the party or parties sought to be charged therewith is violative of the Statute of Frauds and unenforceable. We find that neither the record nor the applicable authorities support any method of purchasing real estate at a foreclosure sale other than by payment of the amount of the best bid, *in cash* in any event, at a reasonable time, under the existing circumstances, but, during the prescribed hours on the day of the sale. First Federal Savings & Loan Ass'n. of Dallas v. Sharp, supra. For the reasons above stated we overrule appellant's points of error nos. 10 through 38, inclusive.

Since we have sustained the action of the trial court in confirming title in the mortgagee free and clear of any claims by Kirkman, we consider that such holding renders moot all of the appellant's points 1 through 9, inclusive, relating to the summary judgment, and therefore pretermits our specifically passing upon each such point. It is our further opinion that the trial of the cross-action upon its merits has effectively litigated all essential questions of fact and law relative to any claim which Kirkman may have to the property or against the appellees and that he cannot rely upon any of the alleged errors in connection with the summary judgment proceeding. Whether considering the appellant's complaints regarding the action of the trial court in granting the summary judgment or as to the confirmation of title in the mortgagee, we are confronted with the vital undisputed fact that Kirkman did not pay the amount of his bid in cash as required by the conditions of the foreclosure sale. We have, therefore, determined that such failure precludes recovery under any theory asserted by appellant with respect to his claim of right to the property or upon any other claims against the appellees.

Since we find no reversible error, the judgment of the trial court is affirmed.