In re INTERCOASTAL DEVELOPMENT, INC., Debtor,

INTERCOASTAL DEVELOPMENT, INC., Plaintiff,

v.

DELTA SAVINGS ASSOCIATION, Defendant.

Bankruptcy No. 79–00806–G3–5.

Adv. No. 82–1387–H3.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Dec. 12, 1985.

George Tarpley, Sheinfeld, Maley & Kay, Houston, Tex., for Intercoastal Development, Inc.

Greg Ostendorf, McLain, Cage, Hill & Niehaus, Houston, Tex., for Delta Sav. Ass'n.

## MEMORANDUM OPINION

EDWARD J. RYAN, Bankruptcy Judge.

This adversary proceeding concerns a loan renewal executed on July 30, 1976, by Intercoastal Development, Inc. ("Intercoastal"), Coastal Plains Development Corporation ("Coastal Plains"), and Charles Ducroz in the principal amount of $234,816.25 to Delta Savings Association of Alvin, Texas. The corporate obligors on the note were closely related, family-owned entities. Ducroz was secretary to Intercoastal Development, Inc. The note was secured initially by a deed of trust lien on approximately 300 acres of real property in Brazoria County, Texas, owned by Intercoastal ("Intercoastal property") and approximately 732 additional acres in the same county owned by Coastal Plains ("Coastal Plains property"). Both tracts were largely undeveloped. In August 1979, the parties to the note defaulted on their payments and both tracts became subject to foreclosure. Delta gave notice of the acceleration and posted both the Intercoastal and Coastal Plains properties for foreclosure on November 6, 1979.

Prior to the foreclosure, Leland Kee, an attorney for Intercoastal and family attorney for Ducroz, contacted A.G. Crouch, II, a member of the board of directors of Delta Savings. He was also one of its attorneys. In addition to the impending foreclosure by Delta, Jon Mercer, a judgment lien creditor for $30,000, had foreclosed on the Coastal Plains property in September, 1979. Kee had advised Ducroz there were sufficient grounds under state law to set aside the Mercer foreclosure, but wanted to negotiate with Delta, instead.

In consultations with Crouch and Ducroz, Kee suggested the following scenario: Delta would proceed to foreclose on the Coastal Plains property, thereby cutting off Mercer, who held a junior lien position; presuming Delta's bid prevailed at the foreclosure sale, Ducroz would then act as broker for a resale of the Coastal Plains property on behalf of Delta; Ducroz would receive the brokerage commission and the proceeds from the resale would apply to the indebtedness to Delta, such that the Intercoastal property would become free and clear.

During the pendency of these discussions, Kee suggested to Ducroz that he contact the law firm of Sheinfeld, Maley and Kay ("Sheinfeld"), primarily a specialist in bankruptcy. Ducroz had had previous dealings with the firm through an earlier personal bankruptcy he had filed. Both Kee and Ducroz had discussions with Arthur Moller, of counsel to Sheinfeld, and later with Tom Henderson, an associate with the firm. On November 2, 1979, Sheinfeld filed a Chapter 11 petition on behalf of Intercoastal Development, Inc.

On November 6, Delta foreclosed on its deed of trust lien, covering both the Intercoastal and Coastal Plains properties. Delta made the single bid at the foreclosure sale for $110,000. Upon learning of the foreclosure, Tom Henderson called Crouch and informed him he could be "thrown in jail" for violation of the automatic stay as to Intercoastal. Crouch, after verifying this information, executed a reformation deed that would set aside the foreclosure as to the Intercoastal acreage. Some twenty-two months later, in November, 1981, Delta resold the Coastal Plains property for $297,000. In Delta's view, the lien against the Intercoastal property is still outstanding.

On the basis of these facts, plaintiff, Intercoastal makes two primary arguments: that negotiations between Delta and Intercoastal principals amounted to a quasi-contract inferrable from the facts, and that Intercoastal, as a matter of equity, should receive a credit for the profit

Delta made on the resale of the Coastal Plains property. In support of its first argument, Intercoastal notes various elements of detrimental reliance: Coastal Plains' failure to contest the Mercer action in state court or to file bankruptcy itself in order to prevent Delta's foreclosure of the Coastal Plains property. The absence of a written agreement and Intercoastal's Chapter 11 filing were merely to avoid problems for Delta with bank regulators who would otherwise require appraisals. In all their dealings with Delta, Kee and Henderson felt Crouch had sufficient authority and ownership interest to bind Delta in any undertaking.

The defendant suggests a different reading of the evidence. Delta points to the testimony of one of the negotiators, Kee, that Intercoastal's filing was a precaution to assure that Delta would live up to its end of the bargain. The filing was rather a defensive reaction, hardly suggesting a firm agreement. Likewise, Henderson's submission of a brokerage agreement, some ten months after the foreclosure and containing stipulations on the division of proceeds from the sale of the Coastal Plains property, was merely an attempt to reduce to writing various negotiations. Delta's lack of response to this writing precluded any enforceable agreement. Above all, Crouch insists he was only acting in a representative capacity for Delta Savings. Despite his personal and family ownership of the association, he insists he never gave the impression he could unilaterally bind Delta to a contract and first would have had to secure approval of its board.

The evidence plainly indicates these were negotiations, not final, enforceable agreements. The timing of the bankruptcy filing, the tone of the subsequent phone conversation between Henderson and Crouch, the later submission of a written brokerage agreement, and various other factors indicate no real meeting of minds had ever occurred. Delta Savings was acting unilaterally, despite continued entreaties by the debtor and its representatives.

■ In addition, taken as a whole, these discussions purported to be an agreement for the sale of real property. As such, they do not fulfill the general Statute of Frauds requirement of a writing in order to avoid unsettled land titles resting on parol evidence. Tex.Bus. & Com.Code Ann. 26.-01(b)(4) (Vernon 1985). This requirement is equally applicable to foreclosures. *Kirkman v. Amarillo Savings Association*, 483 S.W.2d 302, 307 (Tex.Civ.App.—Amarillo, 1972, writ ref'd n.r.e.). Moreover, while the facts may present colorable bad faith bargaining, they do not evince fraud or undue hardship sufficient to justify equitable intercession.

In its second argument, Intercoastal again turns to equity to avoid an alleged unjust enrichment by Delta. In Intercoastal's view, Delta could recover twice: through the profit obtained by the resale of the Coastal Plains property and by pressing its claim for the unpaid balance on the note against the Intercoastal estate. To remedy this, Intercoastal would audit the profit of the resale, which it calculates as $43,000 against Delta's claim in bankruptcy. In support of this, Intercoastal points to the equitable subordination provision of § 510(c) of the Bankruptcy Code and case authority permitting a bankruptcy court to allow or disallow claims. *In re Spanish Trails, Inc.*, 16 B.R. 304, 307 (Bkrtcy.Ariz. 1981).

■ Plaintiff cites no authority or illustration of the approach it is requesting, nor does any seem available. To permit such an allowance would contravene the principle that the purchaser at a trustee's sale acquires all interest in the subject property possessed by the grantor at the time of the execution of the deed of trust, unless there is specific reservation of an interest. *Puntney v. Moseley*, 237 S.W. 1116, 1118 (Tex.Civ.App.—Amarillo, 1922, writ dism'd w.o.j.); 30 Tex.Jur.3d *Deeds of Trust and Mortgages* § 189 (1983). Here, there was no specific reservation. Delta Savings submitted the prevailing bid at the foreclosure sale and took full title. Its subsequent

resale twenty-four months later was an entirely separate transaction.

As there was no enforceable agreement between the parties and there being no authority upon which it would be proper to credit a claim against Intercoastal for the profit from a resale of foreclosed property, the plaintiff's motions are denied.

Let judgment enter accordingly.