INTERTEX, INC., Appellant,

v.

Jax COWDEN, Substitute Trustee, et al., Appellees.

No. 01–85–0997–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 11, 1986.

Rehearing Denied March 19, 1987.

Richard L. Petronella, Houston, for appellant.

Guy S. Lipe, Vinson & Elkins, Eugene J. Pitman, De Lange, Hudspeth, Pitman & Katz, Houston, for appellees.

Before DUGGAN, LEVY and HOYT, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal of a declaratory judgment.

Appellant brought suit against Jax Cowden, substitute trustee, American Mortgage Company, and Crown Life Insurance Company for a declaratory judgment that appellant was entitled to certain real property by virtue of a foreclosure sale. Appellee Crown Life Insurance Company was the foreclosing mortgagee and appellee American Mortgage Company was its servicing agent. Jax Cowden was the substitute trustee who conducted the sale.

After filing its original petition, appellant amended its pleadings to seek money damages under various theories, including alleged violations of the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"), Tex.Bus. & Com.Code Ann. § 17.41 (Vernon Supp.1986). American Mortgage and Crown Life counterclaimed against appellant for a declaratory judgment that appellant obtained no right, title, or interest to the property and also sought recovery of attorney's fees under DTPA § 17.50(c) and the Declaratory Judgments Act, Tex.Civ.Prac. & Rem.Code Ann. § 37.-009 (Vernon 1986).

A trial before a jury resulted in a directed verdict in favor of Jax Cowden, and a declaratory judgment that appellant acquired no right, title, or interest in or to the property. The judgment also awarded attorney's fees of $14,000 against appellant in favor of American Mortgage and Crown Life, plus an additional $10,000 in the event of an appeal to the court of appeals, and an additional $5,000 in the event of a petition for writ of error being filed in the Texas Supreme Court. The trial court did not award appellees attorney's fees pursuant to DTPA § 17.50(c), although there was a jury finding of bad faith and harassment in appellant's DTPA claim.

Appellant has appealed from the judgment of the trial court, and American Mortgage and Crown Life have cross-appealed from that portion of the judgment denying recovery of attorney's fees pursuant to the DTPA.

On February 11, 1985, Jax Cowden, in his capacity as substitute trustee, posted a substitute trustee's notice of sale that advertised the sale of certain real property located in Harris County, under a deed of trust securing an indebtedness to Crown Life. The property was to be sold between the hours of 10:00 a.m. and 4:00 p.m. on

March 5, 1985. Cowden was asked by American Mortgage to bid on behalf of Crown Life. American Mortgage instructed Cowden that the low bid for Crown was to be $200,000 and the high bid was to be $370,066.65, the latter figure representing the total outstanding indebtedness owing to Crown Life as of the date of sale.

Cowden learned prior to the day of sale that there was an outstanding insurance claim due to a fire loss to the property in the approximate amount of $100,000. On the day of sale, Cowden became concerned whether the insurance loss had been considered by American Mortgage in determining the high bid. Cowden attempted to discover whether the insurance loss had been considered by American Mortgage. Upon arriving at the Harris County courthouse at approximately 3:00 p.m. on the day of sale, Cowden contacted his office and learned that American Mortgage had given instructions to lower the highest bid by $100,000.

Upon entering the sale area, Cowden was approached by prospective bidders inquiring as to whether the property in question would be sold. Cowden informed the prospective bidders that there was a question as to the validity of the insurance claim on the property, and that he was going to call the lender for clarification. Cowden was unsuccessful, however, in contacting American Mortgage.

Cowden began the foreclosure sale of the property at approximately 3:24 p.m. There were several prospective bidders present. Cowden instructed his assistant to bid $200,000 on behalf of Crown Life, which was followed by appellant's bid of $201,000. Cowden's assistant, upon his instructions, then bid $225,000, which was followed by appellant's bid of $226,000. Cowden instructed his assistant to bid $250,000. Appellant bid $251,000. Cowden testified that, at the time the bidding reached $251,000, he was concerned that if he sold the property for $270,000, the high bid authorized by American Mortgage, the lender would be selling the property for less than the total debt, and he would not be selling the property to the best and highest offer.

Cowden admitted his confusion and testified that he was concerned about the effect of the outstanding insurance proceeds on the bid calculations, and that in all likelihood, a mistake had been made in those calculations. Cowden testified that, because of these concerns, he instructed his assistant to bid $320,066.65 on behalf of Crown Life, and she did. Cowden testified that he honestly believed that a mistake had been made in the calculation of the high bid and that he instructed his assistant to bid $320,066.65 as agent for Crown Life in the belief that the bid was in the best interest of Crown Life. There being no further bids on the property, Cowden struck the property off to Crown Life for $320,066.65. No one except Cowden and appellant had actually made verbal bids.

On the day after the sale, Cowden reported the events surrounding the sale of the property to American Mortgage. American Mortgage informed Cowden that the bid of $320,066.65 on behalf of Crown Life was unauthorized and that it would not comply with that bid. The property was subsequently reposted for public sale in April.

Vincent Bustamante, president of Intertex, called American Mortgage following the March sale and discovered that the mortgage company had taken the position that the March sale had not been completed. On March 12, 1985, appellant delivered a copy of a cashier's check in the amount of $221,000 to Cowden, requesting instructions as to where the cashier's check should be delivered in exchange for the substitute trustee's deed. At that time, appellant believed that Cowden had instructions not to bid in excess of $220,000 and that appellant's bid of $221,000 was therefore the highest bid for cash. Bustamante also testified that he had adequate funds available on the day of the sale to pay his highest bid of $251,000, and that he could have paid those funds on the day of the sale.

Appellant's first point of error urges that the trial court erred in not granting appellant's motion for judgment notwithstanding the verdict and its motion to disregard the

jury's answers to special issues 2b, 3, and 4.

The jury found in answer to special issue 2b that Cowden acted as agent for Crown Life and American Mortgage when he bid $320,000 at the foreclosure sale without obtaining authority from the note holder. In answer to special issue 3, the jury found that $320,000 was the highest bid for cash at the March 1985 sale. In answer to special issue 4, the jury found that Crown Life was the highest bidder for cash at the March 1985 sale.

Appellant contends that the jury's answers to these issues should have been disregarded as immaterial and against the great weight of the evidence, or for insufficient evidence, or for no evidence, since Crown Life was not the highest bidder for cash as a matter of law.

Appellant argues that Crown was not the highest bidder for cash because its bid was unauthorized and because Crown failed to credit its note within a reasonable time.

■ Although Cowden's bid was unauthorized, Crown could have ratified the bid. Appellant concedes that Crown had the right to ratify the $320,066.05 bid, but argues that the ratification cannot be applied to defeat the intervening rights of other persons, citing *Franke v. Jones*, 170 S.W.2d 795 (Tex.Civ.App.—Amarillo 1943, writ ref'd). Appellant, however, cannot claim the benefits of intervening rights, as appellant acquired no rights between Cowden's bid and Crown Life's refusal to ratify that bid.

Appellant states the general rule in Texas that permits a noteholder to apply and credit its bid against its note as equivalent to applying cash, since it would be "an idle ceremony" for the trustee to require the noteholder to actually pay its bid in cash, which would be immediately returned by the trustee to the noteholder. *Thomason v. Pacific Mutual Life Insurance Co.*, 74 S.W.2d 162 (Tex.Civ.App.—El Paso 1934, writ ref'd). Appellant further states the general rule that a cash bidder, if successful as the highest bidder, must produce the cash within a reasonable time during the hours of the sale. *See First Federal Savings & Loan v. Sharp*, 359 S.W.2d 902, 903 (Tex.1962). Appellant reasons from the two rules that a noteholder bidder who fails to credit the note on the date of the sale or within a reasonable time "is not the highest bidder for cash and its bid is void ab initio."

■ Appellant does not cite any authority for this proposition. The "reasonable time" limitations that are imposed on cash bidders do not appear to be applicable to bidding mortgagees. In holding that the application of a credit on the note in the amount of the bid is sufficient compliance with the bid, none of the Texas cases have indicated that there is any requirement that the credit be entered on the books of the note holder "before 4:00 p.m. on the date of sale." *Habitat, Inc. v. McKanna*, 523 S.W.2d 787, 790 (Tex.Civ.App.—Eastland 1974, no writ); *Birdwell v. Kidd*, 240 S.W.2d 488, 491–92 (Tex.Civ.App.—Texarkana 1951, no writ); *Thomason v. Pacific Mutual Life Insurance Co.*, 74 S.W.2d at 164.

Appellant contends that because Crown Life failed to comply with the bid of $320,066.65, the trustee was required to sell the property to appellant, the second highest bidder, rather than re-post the property for public sale.

In *Clearman v. Graham*, 4 S.W.2d 581 (Tex.Civ.App.—Austin 1928, writ dism'd), the trustee under a deed of trust held a foreclosure sale of real property. The high bidder failed to present cash in the amount of his bid, and two hours after the first sale was completed, the trustee held another sale and struck the property off to another party. The second sale was consummated. The issue on appeal was whether the second sale was valid. The court held:

> The second sale of the 200 acres made by the trustee at 12:45 p.m. on October 6th was invalid. It was made after the bidders at the first sale had dispersed, without the knowledge or presence of Graham, who had already been declared the successful bidder for the property less than two hours before, and sold to Clearman, the holder of the notes, for much

less than Graham's former bid. Even if Thomas' bid for Graham had been in bad faith with no intention to comply with it, after the bidders had dispersed, the property should have been readvertised for sale. 41 C.J. 986; *Love v. Harris,* 156 N.C. 88, 72 S.E. 150, 36 L.R.A. (N.S.) 927, Ann.Cas. 1912D, 1065.

In *Love v. Harris,* 156 N.C. 88, 72 S.E. 150 (1911), the case cited by the court in *Clearman,* the court stated

> [If the bidder] is unable to comply with his bid, the property may be put up for sale a second time. This may be done immediately, if the purchaser's refusal or inability is clearly manifested, and the necessity of advertising a second time or giving new notices may be avoided if the resale is made on the spot and before the bidders disperse, although otherwise there must be a new publication and evidence of the trustee's or mortgagee's continuing authority to make the sale.

156 N.C. 88, 72 S.E. at 152. The court in *Love* held that, in the absence of the circumstances allowing a second sale on the spot, "when the purchaser to whom the property is struck off at a trustee's sale at auction fails to complete his purchase, the property must be readvertised for sale." *Id.,* 156 N.C. 88, 72 S.E. at 153.

The recent case of *Mitchell v. Texas Commerce Bank,* 680 S.W.2d 681 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.), applied the principles of *Clearman.* In *Mitchell,* the foreclosure sale was held by the trustee, and the property was struck off to the high bidder for $128,250. After the bid was accepted, the high bidder was given time to obtain the cash from his bank. When the high bidder did not return with the cash, the sale was reconvened, and the property sold to the bank for $105,000. Others present at the earlier sale had dispersed, and there was evidence that some of these persons were bidders. The court held:

> The resale of the property to the bank, after the bidders had dispersed, without further advertisement of the sale, was invalid. *Clearman v. Graham,* 4 S.W.2d

581 (Tex.Civ.App.—Austin 1928, writ dism'd).

680 S.W.2d at 683. Appellees contend that these cases establish what the trustee is required or allowed to do in the event the high bidder at the sale fails to comply with its bid. The appellees contend that in the event of non-compliance by the high bidder, the trustee (1) may immediately hold a second sale if the prospective bidders at the first sale have not dispersed, or (2) may readvertise the property for sale in a subsequent month.

Appellant contends that the trustee was required to sell the property to appellant, the second highest bidder, rather than repost the property for public sale, citing *Kirkman v. Amarillo Savings Association,* 483 S.W.2d 302 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.). However, *Kirkman* does not stand for the proposition that the trustee is required to sell the property to the next highest bidder at a foreclosure sale when the high bidder defaults on his bid. In *Kirkman,* the noteholder bid approximately $174,000, and Kirkman bid $175,000. The trustee asked Kirkman where his money was. Kirkman replied that the money was in the bank and that he needed time to get it. The trustee testified that before selling the property, he postponed the sale to give Kirkman an opportunity to secure the money. The sale was adjourned at approximately 11:15 a.m. and reconvened at 2:00 p.m. The substitute trustee testified that following the postponement of the sale, and upon Kirkman's failure to tender, in cash, the bid price of $175,000 at that time, he accepted the bid submitted by the mortgagee's representative and announced that the property was sold to Amarillo Savings for the sum of $173,769.76. The court held that

> Kirkman's bid at the foreclosure sale was not a bid of which cognizance was required. Therefore, the substitute trustee was authorized, under the circumstances, to accept the bid of the mortgagee as the highest bid for cash and to execute and deliver the deed to such purchaser.

483 S.W.2d at 309.

The result in *Kirkman* is consistent with that in *Mitchell* and *Clearman.* Both

prospective bidders were present when it became apparent that Kirkman was defaulting on his bid. The trustee was authorized to reconvene the sale at that time. Under the facts of this case, Crown Life's failure to comply with Cowden's bid was not known until the next day. The sale could not reconvene at that point, and, therefore, the re-posting of the property for sale again in April was proper.

The first point of error is overruled.

The second point of error contends that the trial court erred in not granting appellant's motion for judgment notwithstanding the verdict, because under the evidence in this case, the substitute trustee was bound to convey the property to appellant. Appellant asserts that a foreclosure sale to the highest bidder for cash is an *offer* to sell to the highest bidder for cash and that a contract is created upon the making of the highest bid for cash by the successful bidder.

■ Appellant ignores the fact that Cowden never accepted appellant's bid and never declared the property sold to appellant at the foreclosure sale held on March 5, 1985. Nor was appellant the highest bidder for cash.

Appellant and appellees discuss at great length the law of auctions. Appellant concedes that Texas has no cases equating a public sale at foreclosure with a common public auction sale. Appellant argues that a foreclosure sale is similar to an auction "without reserve." If a sale is "without reserve," the auctioneer is bound to sell to the highest bidder. Appellees argue that a foreclosure sale is similar to an auction "with reserve." If a sale is "with reserve," the auctioneer is free to reject the highest bid and withdraw the goods from sale. *See* Tex.Bus. & Com.Code Ann. § 2.328(c) (Vernon 1968).

The distinction between "with reserve" and "without reserve" is irrelevant to the disposition of this case. The appellant was not the highest bidder for cash. No contract was ever created between appellant and any of the appellees.

The second point of error is overruled.

Appellant's third point of error contends that the trial court erred in disregarding the jury's answers to special issue numbers 1(b), 1(d), and 5(b).

Special issue 1 asked:

Do you find from a preponderance of the evidence that JAX COWDEN, Substitute Trustee, complied with his duty to be absolutely fair and impartial to all concerned when he:

\* \* \* \* \* \*

(b) Bid $320,000.00 without obtaining authority from the noteholder at the time he made the bid of $320,000?

\* \* \* \* \* \*

(d) Failed to obtain authority from the noteholder prior to leaving the Courthouse lobby at 3:55 p.m. on March 5, 1985?

The jury answered "no" to special issue numbers 1(b) and 1(d).

Special issue number 5 asked:

Do you find from the preponderance of the evidence that INTERTEX, INC. would have delivered cash or cashier's check in the amount of $251,000.00 to JAX COWDEN, Substitute Trustee:

Answer "Yes" or "No"

a. Before 4:00 p.m. on March 5, 1985?

b. Within a reasonable period of time on March 5, 1985?

INSTRUCTION: You are instructed that "reasonable time" means such time under all of the circumstances that a person of reasonable prudence and diligence would have needed to perform the act contemplated.

The jury answered "no" to special issue 5(a) and "yes" to special issue 5(b).

The trial court granted appellee's motion to disregard findings on special issues. Appellees had maintained that the above answers failed to present any ultimate issue of fact with respect to any relief requested, and should therefore be disregarded.

■ Jury answers to special issues may be disregarded when the issue is immaterial. *C & R Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966). Ap-

pellant asserts that evidence of Cowden's failure to act fairly and impartially was probative of the relief it sought for declaratory judgment. Appellant further asserts that the jury findings should not have been disregarded, as the answers were material to show that appellant was the highest bidder for cash at the sale. We disagree. The question of whether Cowden acted fairly and impartially has no bearing on the question of whether appellant acquired any right, title, or interest to the property.

The jury found that appellant would not have delivered cash or a cashier's check by 4:00 p.m. on March 5, 1985, but would have done so by a "reasonable time" on March 5, 1985. The jury's answer to 5(b) is immaterial under the relevant case law. The Texas Supreme Court in *First Federal Savings & Loan Association v. Sharp*, 359 S.W.2d 902 (Tex.1962), held that the trustee is required to give a bidder a reasonable time to present the cash in the amount of his bid, but the court expressly held that " 'reasonable time' should be limited to a reasonable time during the hours of the sale." In *Kirkman*, 483 S.W.2d at 308, the court stated that the bidder's cash must be presented to the trustee within "a reasonable time before 4 p.m. on the day of the sale." *See also* Baggett, *Acceleration and Foreclosure on Texas Real Estate*, 14 Tex. Tech.L.Rev. 695, 724, n. 194 (1983).

The third point of error is overruled.

Appellant's fourth point of error contends that the trial court abused its discretion in awarding attorney's fees against appellant in favor of American Mortgage and Crown Life, and in denying attorney's fees to appellant.

The Texas Declaratory Judgments Act, Tex.Civ.Prac. & Rem.Code §§ 37.001–37.011 (Vernon 1986), specifically provides for the award of attorney's fees. Section 37.009 states:

> In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.

The trial court's judgment awarding attorney's fees was based on the jury's answer to special issue 11. Special issue 11 stated:

> What sum of money, if any, do you find from a preponderance of the evidence, would be a reasonable and necessary attorneys fee, if any, for services rendered to CROWN LIFE INSURANCE CO. and AMERICAN MORTGAGE COMPANY in connection with the declaratory judgment action?
>
> Answer in dollars and cents, if any.

| | |
|---|---|
| a. In the preparation and trial of this case? | $14,000.00 |
| b. In the event this case is appealed to the Court of Appeals? | $10,000.00 |
| c. In the event this case is appealed to the Texas Supreme Court? | $ 5,000.00 |

In special issue 7, the jury had been asked:

> What sum of money, if any, do you find from a preponderance of the evidence would be a reasonable and necessary attorneys fee, if any, for services rendered to INTERTEX, INC. by its attorney in connection with this case:
>
> Answer in dollars and cents, if any.

| | |
|---|---|
| a. In the preparation and trial of this case? | $20,000.00 |
| b. In the event this case is appealed to the Court of Appeals? | $15,000.00 |
| c. In the event this case is appealed to the Texas Supreme Court? | $15,000.00 |

A trial court is given broad discretion in awarding attorney's fees in a declaratory judgment action. See *Contact Products, Inc. v. Dixico, Inc.*, 672 S.W.2d 607, 610 (Tex.App.—Dallas 1984, no writ). The grant or denial of attorney's fees in a declaratory judgment action lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused that discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985). The trial court determined that appellant had not acquired any right, title, or interest in the subject real property; accordingly, it entered its judgment denying the declaratory relief requested by appellant and granting the declaratory relief requested by American Mortgage and Crown Life.

We find nothing in the record to indicate the court abused its discretion in awarding attorney's fees to the prevailing parties.

The fourth point of error is overruled.

The fifth point of error contends that it was error for the trial court to grant Cowden's motion for instructed verdict, which dismissed Cowden as an improper party.

Appellant does not point to any evidence that would have entitled it to a right of recovery against Cowden.

The fifth point of error is overruled.

In one cross-point, appellees assert that the trial court erred in refusing to award them an additional $3,500 in attorney's fees.

In response to special issue numbers eight and nine, the jury found that appellant's claim under the DTPA was brought in bad faith and for the purpose of harassment. The trial court additionally found in its judgment that the DTPA claim was groundless. Appellees claim that because the jury found that the DTPA claim was asserted in bad faith and for the purpose of harassment, and because the trial court found that the DTPA claim was groundless, the trial court had no discretion to refuse to award the $3,500 in attorney's fees found by the jury to be appellees' reasonable attorney's fees incurred in defending the DTPA claim.

■ We agree. Because all required findings under Tex.Bus. & Com.Code § 17.-50(c) were made, the trial court was required to award the attorney's fees found by the jury to be reasonable and necessary fees incurred in defending the DTPA claim.

Prior to 1979, § 17.50(c) read, in pertinent part, as follows:

On a finding by the court that an action under this section was groundless and brought in bad faith or for the purpose of harassment, the court may award to the defendant reasonable attorney's fees....

Ch. 143, § 17.50, 1973 Tex.Gen.Laws 322, 327. In 1979, the Legislature amended § 17.50(c) by substituting "shall" for "may." Section 17.50(c) now reads as follows:

On a finding by the court that an action under this section was groundless and brought in bad faith, or brought for the purpose of harassment, the court *shall* award to the defendant reasonable and necessary attorney's fees and court costs. (Emphasis added.)

■ Intertex's non-suiting of its DTPA claim during trial did not affect appellees' right to recover attorney's fees. Section 17.50(c) only requires that a party *bring* a groundless suit to be liable for attorney's fees and court costs, not that the party prosecutes its DTPA claim to a conclusion. *Cameo Construction Co. v. Campbell,* 642 S.W.2d 10, 12 (Tex.App.—El Paso 1982, no writ). Appellees incurred attorney's fees in answering and defending a groundless, bad faith suit, and these attorney's fees are recoverable.

We find that the trial court erred in refusing to include an award of $3,500 in attorney's fees in favor of American Mortgage and Crown Life.

Appellees' cross-point is sustained.

The judgment is reformed to allow appellee's recovery of attorney's fees under the DTPA. As reformed, the judgment is affirmed.