**SPECIALTY MAINTENANCE & CONSTRUCTION, INC.,**
Appellant,

v.

**ROSEN SYSTEMS, INC., Appellee.**

**No. 01–89–00409–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 24, 1990.

Dennis Powell, Orange, for appellant.

William V. Wade, Houston, for appellee.

Before COHEN, WARREN and DUNN, JJ.

COHEN, Justice.

Specialty Maintenance & Construction, Inc. ("Specialty") sued Rosen Systems, Inc. ("Rosen"), alleging Rosen violated the Deceptive Trade Practices Act by advertising goods for auction with intent not to sell them as advertised. The trial court rendered a take-nothing judgment, based on the jury verdict that Rosen did not advertise deceptively.

The jury answered question 1(a) as follows:

Do you find from a preponderance of the evidence that on the occasion in question Rosen Systems, Inc.:

A) Advertised goods and services with the intent not to sell them as advertised?

The jury answered "no." It did not answer the next question regarding causation, which was conditioned on an affirmative answer to question one.

In a single point of error, appellant contends the jury's answer was against the great weight and preponderance of the evidence, and that an affirmative answer to the special issue was established as a matter of law. In considering this point, we will consider all the evidence and uphold the verdict unless it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

Rosen conducted an auction of new and used heavy machinery in Houston on October 30, 1984. Rosen mailed an advertisement about the auction to appellant in Florida. The advertisement stated:

**SPECIAL NOTICE**

Certain machines have **minimum opening bids** which are set out in this brochure. [All emphasis here and below is in the original advertisement, except as stated.]

All other machinery will be sold **without minimum** to the highest bidder.

**TERMS:**

Everything offered on as-is, where-is basis without warranty or guarantee. Payment in full sale day. 25% deposit when bid struck down. Balance at conclusion of sale. Nothing can be removed until sale is over. Payment shall be in cash or cashier's check. Company or personal check accepted only if accompanied by letter from Payor's bank guaranteeing payment. No exceptions. Sale subject to local sales tax. **Complete terms will be printed in catalog of sale.** [Not emphasized in the advertisement].

The following appeared in red print:

**NOTICE TO AUCTION BUYERS:** The new machines listed on this page will be sold with a **minimum opening bid.** The minimums are listed with the machinery. We know that most auctions you attend have reserves on some of the major pieces of equipment. These reserves are not revealed to the buyers and they sometimes feel deceived when they do attend and find out there were unreasonable reserves placed on items of interest to them.

We have strived in our 67 years of operation to be straight forward and honest with our customers. It is for this reason that we have implemented this method at this auction. Further we believe these minimums are at such a level that it will entice you to come and bid rather than discourage you from coming.

All other items in the sale except the real estate will be **sold without minimums** to the highest bidder.

Lester Garringer, appellant's production manager, saw an 84–inch vertical boring mill he wanted to buy. The brochure did not state a minimum bid for this equipment.

Garringer came to Houston primarily to purchase the mill and brought a letter of credit for $20,000. When he registered at the auction, he received a bidder's card that contained the terms and conditions of sale below the highlighted words, "Note well." Garringer signed the card, but did not read it that day.

The terms of sale included the following:

13. **ADDITION TO OR WITHDRAWAL FROM SALE:** The auctioneer reserves the right to withdraw from sale any of the property listed or to sell at

this sale property not listed, and also reserves the right to group one or more lots into one or more selling lots or to subdivide into two or more selling lots. Whenever the best interest of the seller will be served, the auctioneer reserves the right to sell all the property listed in bulk.....

16. **RESERVE:** The Auctioneer reserves the right to reject any and all bids. On lots upon which there is a reserve, the auctioneer shall have the right to bid on behalf of the seller which in the opinion of the auctioneer is merely a nominal or fractional advance and might prove injurious to the sale.

Upon arriving at the auction, Garringer also received a catalog listing the items for sale. The vertical boring mill was listed in the catalog without a minimum bid specified. Minimum bids were listed for other items in the catalog. The inside cover of the catalog also listed general terms and conditions of sale in language similar to the bidding card. Garringer first saw the bidding card and catalog of sale at the auction.

Before the auction began, the auctioneer, Mike Rosen, read the rules of sale, including paragraphs 13 and 16, above. Bidding on the vertical boring mill began with the auctioneer requesting a bid of $10,000. There was no response, and Rosen then asked for a beginning bid. Garringer bid $2,000, and Rosen looked at him, identifying him as the bidder. Garringer testified that Rosen looked at him after he made the same bid once or twice more, and shook his head, "no." Then, Rosen passed the piece of equipment, "no sale," and turned over the auction to another auctioneer. No one else bid on the mill. Garringer purchased two other pieces of equipment at the auction that day.

Mike Rosen testified that he rejected Garringer's bid because it was too low. Rosen testified the auction was "with reserve," and thus, he could reject any bids.

The Business and Commerce Code provides with regard to auctions:

(c) Such a sale is with reserve unless the goods are in explicit terms put without reserve. In an auction with reserve the auctioneer may withdraw the goods at any time until he announces completion of the sale. In an auction without reserve, after the auctioneer calls for bids on an article or lot, that article or lot cannot be withdrawn unless no bid is made within a reasonable time ...

Tex.Bus. & Com.Code Ann. § 2.328(c) (Tex. UCC) (Vernon 1968).

Comment 2 to this section states:

2. An auction "with reserve" is the normal procedure ...

Tex.Bus. & Com.Code Ann. § 2.328(c) comment 2 (Tex.UCC) (Vernon 1968).

■■■ Thus, if a sale is "without reserve," the auctioneer must sell to the highest bidder. If it is "with reserve," the auctioneer may reject the highest bid and refuse to sell. *Intertex, Inc. v. Cowden,* 728 S.W.2d 813, 818 (Tex.App.—Houston [1st Dist.] 1986, no writ). Statements in advertisements that goods will be offered "to the highest bidder," do not mean that the auction will be conducted without reserve. *See Drew v. John Deere Co. of Syracuse,* 19 A.D.2d 308, 241 N.Y.S.2d 267, 270 (1963); *see also Sly v. First Nat'l Bank of Scottsboro,* 387 So.2d 198, 200 (Ala.1980). Such statements are considered preliminary negotiation, not creating legal relations; thus, sellers may still reject bids, and bidders may still withdraw them. *Drew,* 241 N.Y.S.2d at 270.

Rosen testified that in the auction trade in Harris County and in Texas, the concepts "reserve" and "without minimum" have different meanings. He testified that "reserve" means the auctioneer may reject all bids and refuse to sell, while in an auction "without reserve," the auctioneer must sell at any price. Thus, in an auction without reserve, if someone bid 50 cents on an 84-inch vertical mill, he would sell for 50 cents.

■■ Rosen also explained the terms "with minimum" and "without minimum." He stated that "with minimum" meant a starting bid was advertised, but it was not necessarily an acceptable bid, just a minimum starting point. Thus, in a sale with

reserve, even though the advertised minimum was $10,000, the auctioneer could still reject it. He testified that "without minimum" meant only that no minimum bid was set. He stated:

> Any bid offered would be entered. And if there is reserve on the sale, then the reserve is still in place and could be exercised.... If it is without minimum and without reserve, no matter what the sale price, it sells. But if it is without minimum and with reserve, then the auctioneer still reserves his rights to bid on behalf of the owner.

Rosen testified that if, as here, he advertised "without minimum," he could nevertheless reject any bid and refuse to sell to the highest bidder. He testified that when he mailed the brochure, he intended, despite its language, to conduct the sale "with reserve," in accordance with the rules of the catalog, the bidder's card, the industry custom, and his company's practice. He admitted that nothing in the brochure stated Rosen reserved the right to reject bids, but testified it was the industry custom not to include the auction rules in mailed advertisements.

Rosen admitted the brochure stated that the goods would be sold to the highest bidder; that he knew when he sent the brochure that the goods would not necessarily be sold to the highest bidder because this and all Rosen auctions were with reserve and the highest bid could therefore be rejected; that the brochure said exactly what Rosen intended it to say; and that its purpose was to entice buyers to attend.

Rosen testified his intent in listing some machinery without a minimum bid was:

> to let people know that there were no minimums in the rest of the machinery other than the new pieces. The intent was that we wanted to let people know that on those new pieces of equipment just exactly what the minimums would be. We felt like the buyers out there would think that they were not going to be able to buy them at a reasonable price, so we wanted to let them know that they could.

Garringer testified the term "reserve" meant to him that the auctioneer could refuse to sell for any reason. To him, selling "without minimum" was the same as selling "without reserve." On the day of the auction, he did not know that under Texas law, all auctions were with reserve unless otherwise stated.

We note that the evidence here would have supported the opposite verdict, i.e., that Rosen Systems, Inc. intended not to sell its goods as advertised. In particular, Rosen's flattering comparison of itself to other auctioneers used the terms "reserves" and "minimums" interchangeably, so that a jury could have easily found that Rosen intended to convey the false impression that "reserves" and "minimums" were the same thing. Although this language may invite lawsuits like this one, the issue before us is whether there was overwhelming evidence that Rosen intended not to sell as advertised.

The evidence showed that:

1) The brochure did not advertise the sale as being without reserve;

2) The brochure disclosed that there were other terms of sale, and Rosen disclosed those terms to Garringer at least twice before the sale, orally and in writing;

3) The term "without minimum" had a specific meaning in the auction industry, and Garringer made his living, at least in part, by buying industrial goods worth tens of thousands of dollars at auctions; and

4) The brochure advertised industrial goods only and was a targeted mailing to an experienced auction purchaser; there was no evidence of advertising on television, radio, or in general circulation print media that reached, or was intended to reach, an unsophisticated plaintiff.

We deem the foregoing to be probative of Rosen's intent, an element of appellant's claim. Giving great deference, as we must, to the jury's discretion, we find that it could have inferred that Rosen did not intend to sell other than as advertised because Rosen could have reasonably as-

sumed that an experienced auction buyer, like Garringer's employer, would know the law and customs of the trade and thus would assume the auction was with reserve. We may not set aside a jury verdict just because we may disagree with it.

We conclude that although the brochure was potentially highly misleading, the jury could have found it was not intended to mislead this particular plaintiff. Therefore, the verdict was not against the great weight of the evidence.

The point of error is overruled.

The judgment is affirmed.