ALLIED TOWING SERVICE, Appellant,

v.

John E. MITCHELL, Appellee.

No. 05–91–00632–CV.

Court of Appeals of Texas,
Dallas.

May 26, 1992.

**580**

Carol Crabtree Donovan, Dallas, for appellant.

Jeffrey Cook, Dallas, for appellee.

Before BAKER, MALONEY and KAPLAN, JJ.

## OPINION

BAKER, Justice.

John E. Mitchell sued Allied Towing Service under the DTPA[1] for wrongfully towing his car. Mitchell also alleged causes of action for fraud and conversion against Allied. A jury found for Mitchell. The trial court entered judgment on the verdict. Allied asserts twenty-four points of error. We affirm.

### ALLIED'S CONTENTIONS

Allied contends there is no evidence or insufficient evidence to support the findings that: (1) Mitchell was a consumer under the DTPA; (2) Allied committed a knowing violation of the DTPA; (3) Allied made fraudulent representations to Mitchell; (4) Allied converted Mitchell's car; (5) Allied's actions were the producing or proximate cause of Mitchell's damages; and (6)

Mitchell was entitled to the damages found by the jury and awarded by the court.

Allied contends the trial court's award of damages was excessive. It contends the trial court erred in awarding attorney's fees and that the trial court erred by denying Allied's motion for new trial.

### THE TOW

Mitchell and a friend went to Royal Rack to play pool one evening. Mitchell parked his BMW in a lot near Royal Rack and went directly to Royal Rack. Decorators Anonymous owned the lot. Decorators agreed to allow Royal Rack patrons to park in its lot from 8:00 p.m. until 2:00 a.m. Allied posted a sign at the lot. The sign read:

PARKING ONLY

FOR CUSTOMERS OF DECORATORS ANONYMOUS

24 HOURS—7 DAYS

WHILE PATRONIZING ROYAL RACK

8PM–2AM—7 NIGHTS

ALL OTHERS WILL BE TOWED AT

OWNER'S EXPENSE & LIABILITY

ALLIED TOWING 800 LEAR 428-8900

Mitchell said he read the sign before going to the Royal Rack.

Customers paid Royal Rack $2 an hour to play pool there. Royal Rack issued a receipt to Mitchell. The receipt shows Royal Rack billed Mitchell for three hours, from 9:46 p.m. until 12:46 a.m. Mitchell paid Royal Rack $12. Mitchell left Royal Rack about 12:51 a.m., went to the parking lot, and found that his car was no longer there. Police officers suggested Mitchell contact the towing company before reporting his car stolen.

Mitchell called Allied. He determined Allied towed his car. Upon arrival at Allied's lot, Mitchell gave Royal Rack's receipt to

---

1. *See* TEX.BUS. & COM.CODE ANN. § 17.41 et seq., known as the Deceptive Trade Practices–Consumer Protection Act. Unless otherwise stated, all statutory references to the DTPA are to the Business and Commerce Code.

an Allied employee. The employee refused to accept the receipt. He told Mitchell it would cost him $69 to get his car back. Allied's employee refused Mitchell's suggestion to call Royal Rack's manager or the police. He demanded that Mitchell pay him the $69 in cash.

Mitchell paid the $69 fee. Allied allowed Mitchell to drive his car out of the lot. When Mitchell drove out of the lot, he noticed the tires screeched. He also noticed the steering wheel had too much play in it. Mitchell notified the police and filed an accident report. Mitchell testified he did not have any problems with the steering or the wheels before the Allied tow.

The next day, Mitchell had his car towed to a dealership. He paid that towing company a $72 fee. He rented a car for seven days at a cost of $242.44. Mitchell paid the dealer $568.38 for repairs. Mitchell said the dealer did not repair all the damage that occurred from the Allied tow. He demanded $1000 for additional repairs. He admitted he had no documentary evidence to support this demand.[2]

Mitchell said he lost ten hours of work as a result of the wrongful tow. Mitchell was an employee on commission. He calculated he made about $75 an hour based upon his last year's income. He also testified he had to hire a lawyer to bring the suit and agreed to pay the lawyer.

Allied kept a spotter near the parking lot on the evening it towed Mitchell's car. Allied instructed the spotter not to tow cars of someone who parked and walked directly to Royal Rack. Allied also instructed the spotter not to tow a car if there was any doubt whether the owner illegally parked it. If a person went to Royal Rack and then left to go to another establishment, Allied considered this car legally parked.

The spotter said he saw Mitchell go to a Mexican restaurant after parking his car. He testified that individuals who had their cars towed often entered Royal Rack after they read Allied's sign. The spotter said individuals frequently came to Allied's lot with Royal Rack receipts covering the time in which Allied towed their cars. These receipts often conflicted with the spotter's personal observations. If Allied disagreed with anyone claiming to be a Royal Rack patron, Allied required payment of the towing charge—even if the individual had a receipt.

## IS MITCHELL A CONSUMER?

### 1. Allied's Contentions

In its first five points of error, Allied contends that Mitchell is not a consumer under the DTPA. Allied argues that Mitchell did not prove he actually sought or acquired goods or services from Allied. Allied argues there must be some reasonable relation between the DTPA claim and the goods or services Mitchell sought. Allied argues that Mitchell is not a consumer because: (1) he did not request Allied to tow his car; (2) Royal Rack did not own the lot; (3) Allied had no contractual relationship with Royal Rack; (4) Royal Rack received the money paid for beer and pool, not Allied; (5) Mitchell paid the $69 after the tow; and (6) Mitchell had no contact until Allied towed his car.

### 2. Applicable Law

Whether a party is a consumer is a question of law the trial court decides based upon all the evidence. *Security Bank v. Dalton*, 803 S.W.2d 443, 451 (Tex. App.—Fort Worth 1991, writ denied). A party must meet two requirements to be a consumer. First, the party must have sought or acquired goods or services by purchase or lease. Second, the goods or services purchased or leased must form the basis of the DTPA complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981).

A party need not show contractual privity with the opposing party to assert consumer status under the DTPA. *See*

---

**2.** Although Allied mentions the claim for $1000 in its brief, we note that the jury awarded zero damages to Mitchell for additional damages to his car that had not been repaired at the time of trial.

*Precision Sheet Metal Mfg. v. Yates*, 794 S.W.2d 545, 551 (Tex.App.—Dallas 1990, writ denied). Even an involuntary acquisition of goods or services is enough to make a party a consumer under section 17.45(4). *Nelson v. Schanzer*, 788 S.W.2d 81, 86–7 (Tex.App.—Houston [14th Dist.] 1990, writ denied). We define consumer status under the DTPA by a party's relationship to a transaction in goods or services—not by a party's relationship to the opposing party. *Cameron*, 618 S.W.2d at 541. However, the goods or services sought or acquired by the party must form the basis of the party's complaint. *See Flenniken v. Longview Bank and Trust Co.*, 661 S.W.2d 705 (Tex.1983).

### 3. Application of Law to Fact

◼ Allied's basic contention is that Mitchell sought or acquired goods and services from Royal Rack—not Allied. However, the service forming the basis of Mitchell's complaint was the wrongful towing of Mitchell's car. The towing occurred because Mitchell patronized Royal Rack and sought or acquired entertainment.

There is a sufficient connection between Mitchell and the involuntary tow for him to qualify as a consumer under the DTPA. Royal Rack had a contractual arrangement with Decorators Anonymous allowing Royal Rack patrons to use the parking lot from 8:00 p.m. until 2:00 a.m. Allied was aware of this agreement. It enforced the agreement by towing away cars of individuals who were not Royal Rack customers. The tows were for the benefit of Royal Rack. In addition to providing entertainment and pool tables, Royal Rack provided free parking for its customers. Mitchell voluntarily entered Royal Rack for entertainment purposes. He took advantage of the free parking. There is a sufficient connection between Mitchell's use of Royal Rack's free parking and Allied's towing.

◼ Mitchell did not seek or acquire Allied's towing services. However, voluntary acquisition is not dispositive of Mitchell's consumer status. A party who involuntarily acquires services can qualify as a consumer under the DTPA. *See Nelson*, 788 S.W.2d at 86–7. *Nelson* was a DTPA case involving an involuntary bailment. A landlord evicted a tenant for nonpayment of rent. Constables had the tenant's personal effects removed to a warehouse for storage and hired a private moving company to transport the goods to the warehouse. The *Nelson* court concluded the moving and storage company was a bailee. The moving company lost or destroyed some of the tenant's personal effects. The *Nelson* court held the tenant was a consumer under the DTPA when he involuntarily became a bailor. *Nelson*, 788 S.W.2d at 86–7. Similarly, Mitchell became a DTPA consumer when Allied towed his car. *Nelson*, 788 S.W.2d at 86–7.

## NO EVIDENCE—INSUFFICIENT EVIDENCE

### 1. Standard of Review

#### A. No Evidence

◼ No evidence points are questions of law. *Tomlinson v. Jones*, 677 S.W.2d 490, 492 (Tex.1984). In reviewing a no evidence point, we consider only the evidence and inferences that support the jury's findings. We disregard all evidence and inferences that do not support the jury's findings. *Jacobs v. Danny Darby Real Estate*, 750 S.W.2d 174, 175 (Tex. 1988).

#### B. Sufficiency of the Evidence

◼ In reviewing an insufficient evidence point, we view all the evidence in the record including any evidence contrary to the judgment. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). We set aside the verdict only if the evidence standing alone is too weak to support the jury's findings or if the jury's answers are so against the overwhelming weight of the evidence that they are manifestly unjust and clearly wrong. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). The jury is the trier of fact and decides the fact issues by a preponderance of the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). We cannot pass upon the credibility of the witnesses and substitute our judgment for

that of the trier of fact, even if there is conflicting evidence that supports a different conclusion. *Harco Nat'l Ins. Co. v. Villanueva,* 765 S.W.2d 809, 810 (Tex. App.—Dallas 1988, writ denied).

■ To reverse on insufficiency grounds, we must set forth the relevant evidence in detail. We must clearly state why the jury's findings are factually insufficient or so against the great weight and preponderance as to be manifestly unjust; why they shock the conscience; or clearly show bias. We must state how the contrary evidence greatly outweighs the evidence supporting the verdict. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

## FALSE, MISLEADING, OR DECEPTIVE ACT OR PRACTICE

In its sixth and seventh points of error, Allied contends there was no evidence or insufficient evidence to support the jury finding that it engaged in a false, misleading or deceptive act or practice that was a producing cause of damages.[3]

### 1. No Evidence

■ We first review the evidence that tends to support the jury finding. Mitchell testified he read Allied's sign before he went to Royal Rack. The sign stated that Royal Rack patrons could park in the lot. Although Mitchell's car was legally parked, Allied towed it. Mitchell was a Royal Rack customer. After going to Allied's lot, Mitchell tried to retrieve his vehicle. Although he provided Allied with proof that he patronized Royal Rack, Allied refused to return Mitchell's car unless he paid the towing charge.

The trial court instructed the jury that false, misleading, or deceptive acts or practices in the conduct of Allied's trade or commerce includes:

representing that an agreement confers or involves rights, remedies or obli-

gations which it does not have or involve, or which are prohibited by law; ....

*See* section 17.46(b)(12).

There is some evidence that Mitchell was a legally parked Royal Rack patron entitled to use the parking lot free of charge. Furthermore, there is some evidence that Allied represented it would not tow Royal Rack customers who parked in the lot. Allied violated this representation by towing Mitchell's car, though he met the conditions specified in Allied's sign. The jury could find that Allied violated this representation by refusing to return Mitchell's car after Mitchell proved he was a Royal Rack customer. We overrule Allied's sixth point of error.

### 2. Insufficient Evidence

■ We now review the evidence that is contrary to the jury finding. Allied testified its spotter was near the parking lot on the evening it towed Mitchell's car. The spotter would not tow legally parked cars. Allied understood that a legally parked car was one from which the occupants went directly to Royal Rack.

The spotter testified Mitchell went to a Mexican restaurant after parking his car. He testified that individuals who had their cars towed often came to the tow lot with Royal Rack receipts covering the period in which Allied towed their cars. If Allied disagreed with anyone claiming to be a Royal Rack patron, Allied required payment of the towing charge—even if the individual had a receipt.

A dispute existed about whether Mitchell went to the Mexican restaurant or Royal Rack after parking his car. However, we cannot substitute our judgment for that of the jury. Although we consider all of the relevant evidence, this Court is not a fact finder and cannot pass upon the credibility of the witnesses—even if there is conflicting evidence that supports a different con-

---

**3.** Allied also contends that Mitchell did not plead what act or practice was false, misleading or deceptive under section 17.46(b). Rule 90 of the Texas Rules of Civil Procedure provides a party cannot seek a reversal on a pleading defect that is not specifically pointed out by writ-

ten exception and brought to the judge's attention before the judge instructs or charges the jury. *See March v. Thiery,* 729 S.W.2d 889, 893 (Tex.App.—Corpus Christi 1987, no writ); Tex. R.Civ.P. 90. Allied waived its right to complain about any pleading defects.

clusion. *Harco Nat'l Ins. Co.*, 765 S.W.2d at 810. The evidence is sufficient to support the jury finding. We overrule Allied's seventh point of error.

## UNCONSCIONABLE ACTION OR COURSE OF ACTION

In its eighth and ninth points of error, Allied contends there is no evidence or insufficient evidence to support the jury finding that it engaged in any unconscionable action or course of action that was a producing cause of damages.[4]

### 1. No Evidence

■■■ The evidence and inferences that tend to support the jury finding show that Allied represented that Royal Rack customers could park in the lot. The evidence also shows that Mitchell patronized Royal Rack and parked in its parking lot. Although Mitchell legally parked his car, Allied towed it. When Mitchell learned Allied towed his car, he showed Allied his receipt. Allied refused to give Mitchell his car until he paid the towing charge.

The trial court instructed the jury that unconscionable action or course of action includes:

> an act or practice which, to a person's detriment ... takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree,....

*See* section 17.45(5).

There is some evidence to support a jury finding that Allied acted unconscionably. Mitchell did not know that Allied would tow his car when he parked and walked into Royal Rack. The jury could find that Allied took advantage of Mitchell's lack of knowledge. We overrule Allied's eighth point of error.

### 2. Insufficient Evidence

■■■ Reviewing the evidence that is contrary to the verdict, Allied testified Mitchell illegally parked his car because he went to

a Mexican restaurant after parking his car. We cannot substitute our judgment for that of the jury about the witnesses' credibility. There is sufficient evidence to support the jury's finding about Allied's unconscionable activity. We overrule Allied's ninth point of error.

## KNOWINGLY COMMITTED CONDUCT

In its tenth and eleventh points of error, Allied contends there is no evidence or insufficient evidence to support the jury findings that the unconscionable action or course of action was done knowingly. Allied also contends there is no evidence or insufficient evidence that Mitchell is entitled to additional damages because Allied's conduct was committed knowingly.

### 1. No Evidence

■■■ The evidence and inferences supporting the verdict show that Mitchell walked directly into Royal Rack. Allied testified it had a spotter watching the parking lot. The jury could infer that this spotter saw Mitchell walk into Royal Rack. The jury could also infer that although Mitchell parked legally, the spotter had Mitchell's car towed. Mitchell testified that Allied refused to release his car after he showed the Royal Rack receipt to Allied's employee. The evidence showed Allied had refused to release cars on prior occasions when car owners produced valid receipts. The jury could find that Allied purposefully refused to return Mitchell's car *after* Mitchell proved he parked legally.

### 2. Insufficient Evidence

■■■ The evidence and inferences contrary to the finding are that Mitchell was not a Royal Rack customer. Allied's evidence also allows the jury to infer that Mitchell got a Royal Rack receipt after he found out that Allied had towed his car. The trial court instructed the jury that "knowingly" meant:

---

4. We note that Allied complains about the sufficiency of the evidence to support global findings. However, Allied does not complain that the questions submitted failed to identify or be

conditioned upon a specific act or course of action. *See and compare Bennett v. Bailey*, 597 S.W.2d 532, 533–34 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.).

the actual awareness of the falsity, deception or unfairness of the act or practice giving rise to the consumer's claim. *See* section 17.45(9).

The jury choose to believe Mitchell's testimony. We can review only the evidence. We cannot gauge the credibility of the witnesses. There is some evidence that allows the jury to infer Allied was aware of the falsity, deception or unfairness of the act or practice of towing Mitchell's car. There is sufficient evidence to allow the jury to conclude that Allied knowingly refused to return Mitchell's car after he proved he parked legally. We overrule Allied's tenth and eleventh points of error.

### PRODUCING CAUSE

In its eighteenth and nineteenth points of error, Allied contends there is no evidence or insufficient evidence to support the jury's findings that Allied's actions were a producing and/or proximate cause of Mitchell's damages. Because the DTPA action is dispositive of this appeal, we need not consider Allied's proximate cause argument.

#### 1. No Evidence

■ There is no dispute that Allied towed Mitchell's car. Mitchell testified his car ran well before Allied towed it. After the tow, the tires screeched and the steering wheel had too much play. Mitchell had to have another towing company tow his car to a dealership. The dealer repaired the damage. He rented a car and paid to have his car repaired. Mitchell lost ten hours of time and hired counsel to file this lawsuit.

The trial court instructed that jury that producing cause means:

an efficient, exciting or contributing cause which, in a natural sequence, produced the damages or harm complained of, if any. There may be more than one producing cause. A producing cause does not require that the damages be foreseeable.

This is a proper instruction. *See Rourke v. Garza*, 530 S.W.2d 794, 801 (Tex.1975); *Dubow v. Dragon*, 746 S.W.2d 857, 860

(Tex.App.—Dallas 1988, no writ). There is some evidence to support the jury's finding that the wrongful towing was a producing cause of Mitchell's damages.

#### 2. Insufficient Evidence

■ Allied contends there is no showing in the record that qualified Mitchell to testify about the cost of reasonable and necessary repairs or rental car expenses. Allied did not object to the repair bill when Mitchell offered it into evidence. Mitchell also testified that before the tow, he did not experience the problems that required repair. Allied did not object to this testimony or ask for a limiting instruction. The jury could conclude that the repair bill represented the damages caused by the wrongful tow.

■ The reasonable rental value of a substitute vehicle is sufficient evidence to support an award of actual damages. *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 119 (Tex.1984). Mitchell testified about his rent car charges and offered the receipt for payment into evidence. Allied did not object to the evidence. Allied does not claim the amount was unreasonable. The jury could find that this amount was the reasonable rental value of a substitute vehicle.

■ Allied also contends Mitchell, who was self-employed, did not produce evidence showing what he could have earned while he had to miss work. *See River Oaks Townhomes Owners' Ass'n v. Bunt*, 712 S.W.2d 529, 533 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Mitchell produced his W–2 form for the previous year and used this as a basis for calculating his earnings. A previous year's income tax return can provide a reasonable basis for calculating lost income. *See Tri–State Motor Transit Co. v. Nicar*, 765 S.W.2d 486, 492 (Tex.App.—Houston [14th Dist.] 1989, no writ).

Allied claimed the damages to Mitchell's car did not result from the tow. Allied's mechanic testified the parts Mitchell had repaired would show some wear and tear because of the car's age. The mechanic did

testify the repair costs for labor at the dealership were fair. He testified a rear tow could not cause the complained of damages. The tow truck driver did not testify. There is sufficient evidence to support the jury's finding that the wrongful tow was a producing cause of Mitchell's damages. We overrule Allied's eighteenth and nineteenth points of error.

## DAMAGES

In its twentieth and twenty-first points of error, Allied contends there is no evidence and insufficient evidence to support the jury's findings about the amount of actual damages, additional damages, and punitive damages. In its twenty-second point of error, Allied contends the damage award was excessive.

### 1. No Evidence

■ The evidence is sufficient to support the award of actual damages. The documentary evidence and Mitchell's unobjected-to testimony form the basis for the actual damages. Actual damages totaled $1704.82. The total damage award was $5819.28. The jury found that Allied acted knowingly. The charge asked what additional sum of money should be awarded to Mitchell. The jury awarded Mitchell $2,400 as additional damages. The DTPA provides:

> In a suit filed under this section, each consumer who prevails may obtain: (1) the amount of actual damages found by the trier of fact. In addition the court *shall* award two times that portion of the actual damages that does not exceed $1,000. If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000, . . . .

Section 17.50(b) (emphasis added).

The trial court must award two times the first $1,000 of actual damages. *Danny Darby Real Estate, Inc. v. Jacobs*, 760

S.W.2d 711, 717 (Tex.App.—Dallas 1988, writ denied). The jury may award three times the actual damages in excess of $1000 if it finds the defendant acted knowingly. *See Martin v. McKee Realtors Inc.*, 663 S.W.2d 446, 447 (Tex.1984). The permissible amount the jury could award as additional damages was $2114.46. We find the damage award proper.[5]

The evidence shows the trial court correctly calculated the amount of damages under the DTPA. The damage award was not excessive. Because the evidence supports the damage award under the DTPA, we need not consider Allied's punitive damage complaint. *See Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 367 (Tex.1987). We overrule Allied's twentieth, twenty-first, and twenty-second points of error.

## ATTORNEY'S FEES

■ In its twenty-third point of error, Allied contends the trial court erred in awarding attorney's fees to Mitchell. Allied's brief states that it does not dispute that a prevailing party can recover attorney's fees under the DTPA. We agree. *See* section 17.50(d). We overrule Allied's twenty-third point of error.

## NEW TRIAL

In its twenty-fourth point of error, Allied contends the trial court erred by denying its motion for new trial. Allied contends the lack of enough evidence to support the jury's findings warrants a new trial. This in turn leads Allied to conclude there is not enough evidence to support the trial court's judgment. We disagree. The evidence supports a verdict for Mitchell under the DTPA. The trial court did not abuse its discretion by overruling Allied's motion for new trial. We overrule appellant's twenty-fourth point of error.

Because of our disposition of the DTPA cause of action, we need not discuss Al-

---

**5.**

| | |
|---|---|
| Actual Damages | $1,704.82 |
| Permissible Jury Award | $2,114.46 |
| (3 times $704.82) | |
| Trial Court's Mandatory Award | $2,000.00 |
| Total Damages | $5,819.28 |

lied's points of error twelve through seventeen.

We affirm the trial court's judgment.