ST. PAUL OIL AND GAS COR-
PORATION and J. Thomas
Parrino, Appellants,

v.

TRIJON EXPLORATION, INC., Appellee.

No. 13–92–427–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 18, 1994.

Rehearing Overruled March 17, 1994.

Wyatt L. Brooks, Culton, Morgan, Britain & White, Amarillo, D. Patrick Long, Patton, Boggs & Blow, Dallas, for appellant.

Anthony F. Constant, Corpus Christi, for appellee.

Before GILBERTO HINOJOSA, PAUL W. NYE,[1] and DORSEY, JJ.

*OPINION*

GILBERTO HINOJOSA, Justice.

St. Paul Oil and Gas Corporation and J. Thomas Parrino appeal from a judgment rendered against them and in favor of Trijon Exploration, Inc., pursuant to a jury verdict

---

1. Former Chief Justice, retired April 30, 1993.

supporting Trijon's claim for damages for a violation of section 17.46(b)(12) of the Texas Deceptive Trade Practices–Consumer Protection Act, Tex.Bus. & Com.Code Ann. § 17.41 *et seq.* (Vernon 1987). Appellants assert seven points of error challenging the sufficiency of the evidence to show a DTPA violation, damages, or Trijon's status as a DTPA "business consumer," and complaining of an excessive judgment and error in the granting of a trial amendment. We reverse and render judgment in favor of appellants.

This case involves a competitive bidding process for the purchase of a portion of a working interest in an oil and gas lease. St. Paul owned a percentage of the working interest in particular oil wells and related leasehold estates which it offered for sale to Trijon and the Flournoy Drilling Company, the other working interest owners of the lease. However, St. Paul rejected the initial bids made by Trijon and Flournoy and solicited a second round of bids. This lawsuit arises from alleged misrepresentations made concerning that second bidding round.

Trijon claims that after the first bidding round, it was unwilling to participate in the second round without an assurance that the highest bidder would receive an enforceable contract to purchase from St. Paul. Trijon asserts that J. Thomas Parrino, St. Paul's attorney, represented to Ron Chachere, Trijon's attorney, that St. Paul would sell to the highest bidder, provided the bid was over $1 million. However, St. Paul disputed this allegation, and Parrino specifically denied making the representation.

In the second round, Trijon made the highest bid of $1.225 million, compared to Flournoy's bid of $1.2 million. However, because Trijon's bid was not yet fully funded, St. Paul awarded the property to Flournoy.[2] Trijon then commenced the present lawsuit alleging

that Parrino's misrepresentation that St. Paul would sell to the highest bidder violated DTPA section 17.46(b)(12).

By their first point of error, appellants challenge the legal sufficiency of the evidence to show a misrepresentation of an agreement in violation of DTPA section 17.46(b)(12), and that the evidence, at most, supports a breach of contract claim.

■ Parrino's alleged misrepresentation that St. Paul would sell the property interest to the highest bidder over $1 million is comparable to an auction "without reserve," in which the auctioneer, once he has called for bids, may not withdraw the article to be sold unless no proper bid is made within a reasonable time. *See Specialty Maintenance & Construction, Inc. v. Rosen Systems, Inc.,* 790 S.W.2d 835, 837 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Intertex, Inc. v. Cowden,* 728 S.W.2d 813, 818 (Tex.App.—Houston [1st Dist.] 1986, no writ); Tex.Bus. & Com.Code Ann. § 2.328(c) (Vernon 1968). Accordingly, an agreement to sell to the highest bidder constitutes an offer which is accepted and a contract formed upon the making of the highest bid by the successful bidder. *Cowden,* 728 S.W.2d at 818; *see also Drew v. John Deere Co. of Syracuse,* 19 A.D.2d 308, 241 N.Y.S.2d 267, 269 (1963).[3]

In the present case, the alleged representation that St. Paul would sell to the highest bidder might then amount to an offer which Trijon accepted by making the highest bid.[4] However, Trijon has not sought to enforce the representation and bid as a contract itself, but only as an independent DTPA misrepresentation of an agreement.

■ Thus, the issue in the present case is whether St. Paul's alleged representation that it would sell to the highest bidder violated the DTPA as "representing that an agreement confers or involves rights, remedies, or

---

2. Flournoy later withdrew its offer under pressure from Trijon, and St. Paul sold the property to a third party.

3. Along these lines, an auctioneer's intent to mislead the bidders by the terms he uses to describe the auction in his brochure may be actionable under DTPA section 17.46(b)(9) as advertising goods with the intent not to sell them as advertised. *See Specialty Maintenance,* 790 S.W.2d at 838.

4. Though we are not called upon to address this issue in the present appeal, we note that Parrino's oral representation may be insufficient to satisfy the statute of frauds with regard to a contract for the sale of an interest in real property. *See* Tex.Bus. & Com.Code Ann. § 26.01 (Vernon 1987).

obligations which it does not have or involve, or which are prohibited by law." Tex.Bus. & Com.Code Ann. § 17.46(b)(12) (Vernon Supp. 1994).

Generally, this section protects a consumer against false statements of fact concerning their rights under an unambiguous contract. *Leal v. Furniture Barn, Inc.,* 571 S.W.2d 864 (Tex.1978); *Quitta v. Fossati,* 808 S.W.2d 636, 644 (Tex.App.—Corpus Christi 1991, writ denied).

■ However, in the present case it is undisputed that there was no underlying *agreement* between St. Paul and the bidders for Parrino to misrepresent. At most there was merely an invitation from St. Paul to the prospective bidders to enter a second round of bidding, which amounted to nothing more than preliminary negotiation. *See Specialty Maintenance,* 790 S.W.2d at 837; *Drew,* 241 N.Y.S.2d at 270.

■ We hold that a violation of section 17.46(b)(12) depends upon the existence of an underlying contract or agreement the terms of which are misrepresented, and it does not include representations which are completely unconnected with any such agreement. *See Home Savings Association Service Corp. v. Martinez,* 788 S.W.2d 52, 56–57 (Tex.App.—San Antonio 1990, writ denied) (lender's statements to buyer that seller of renovation work was reputable and that lender would help make the seller perform).[5] We sustain the appellant's first point of error.

The remaining points of error are not dispositive and we do not address them. *See* Tex.R.App.P. 90(a)

We REVERSE the judgment of the trial court and here RENDER judgment that Trijon take nothing on its DTPA claims against St. Paul and Parrino.

PAUL W. NYE, C.J., not participating.

---

5. *But see Allied Towing Service v. Mitchell,* 833 S.W.2d 577 (Tex.App.—Dallas 1992, no writ). In *Mitchell,* the finding of a DTPA violation was upheld based on a tow company's sign representing that the company would not tow the cars of customers of a certain establishment. Even in the absence of evidence of some underlying agreement which the sign misrepresented, the Dallas court of appeals found sufficient evidence of a section 17.46(b)(12) violation when the towing company disregarded its sign and towed a customer's car. *Id.* at 583.