NO. 07-03-0362-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



AUGUST 16, 2004



______________________________




MICHAEL LEROY CAMERON, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 9TH DISTRICT COURT OF MONTGOMERY COUNTY;



NO. 01-09-05992-CR; HONORABLE FRED EDWARDS, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Appellant Michael Leroy Cameron pleaded not guilty, but was convicted of delivery
of a controlled substance after a jury trial. Finding the enhancement allegations contained
in the indictment to be true, the trial court assessed a sentence of 25 years confinement. 
With two issues, appellant asserts: (1) the trial court erred in prohibiting his prior attorney
from testifying unless appellant waived the attorney-client privilege; and (2) his trial counsel
was ineffective. We affirm.

 Ron Pickering and Philip Cash were working as undercover narcotics officers at the
Handle Bar nightclub in Conroe on the night of April 26, 2002. Just before midnight,
Pickering was approached by Stacy Warden, appellant's co-defendant, who asked if he
wanted to smoke some marihuana with her. Pickering declined, but asked if she knew
where he could buy some cocaine. Warden "said she could probably get it" for him, then
placed a call on Pickering's cell phone. After concluding the phone call, Warden confirmed
that "it [the cocaine] would be there within 15 minutes." When Pickering inquired about
price, Warden advised him that the drugs would cost $120. 

 Shortly before 2:00 a.m., a man later identified as appellant entered the nightclub,
made eye contact with Warden, then walked out. Warden told Pickering that the drugs had
arrived, then Pickering, Cash, and Warden went outside to the parking lot. There, the
officers observed Warden standing by appellant next to a pickup truck. Warden took what
Pickering "assumed was the cocaine" from appellant, "put it in her fist and folded her arms
and walked across the parking lot" to him. She then opened her fist to reveal the cocaine. 
Pickering took the drugs from Warden and gave her the money, which she placed "in her
hand and [then she] walked back with her hands crossed like she did when she
approached" him. When Warden reached appellant, she handed him the money. Once
the transaction was complete, Warden, Cash, Pickering, and appellant met at the truck,
where Warden introduced appellant as Mike. Appellant asked Pickering "how he liked the
blow," the street name for powder cocaine. After Pickering "told him it was great," appellant
advised him that "if [he] needed anything more that [he] should contact [Warden]." 

 At some point during the evening, Pickering obtained the license plate number of the
truck by which he saw appellant standing. Later that night, Pickering contacted his
dispatcher and "had the plate run" and discovered that the truck was registered to an
individual who previously had been "handled" by the Montague County Sheriff's
Department. From that information, Pickering developed the owner's date of birth, height,
and weight, which he transmitted to the Department of Public Safety. After DPS provided
Pickering with a driver's license photo, he determined that the address on the license was
the same as the address on the vehicle registration. Moreover, Pickering recognized the
person depicted in the driver's license photo as the same individual with whom he had
come into contact at the nightclub. Having thus developed appellant as the suspect in a
delivery of a controlled substance case, Pickering referred the case to the district attorney's
office. The grand jury indicted appellant for that offense in September of 2001. 

 With his first issue, appellant maintains the trial court erred in refusing to allow his
former trial attorney, Guy Jones, to testify absent a complete waiver of the attorney-client
privilege. Specifically, appellant contends that the testimony he sought to elicit from Jones
was not privileged because it had nothing to do with confidential information between him
and Jones. Rather, appellant maintains that Jones would have "provide[d] beneficial
defense testimony based on inconsistencies in the State's file." Thus, the trial court was
wrong to conclude that such testimony would violate the attorney-client privilege and open
the attorney to unqualified cross-examination by the State. (1) We disagree. 

 The basis of appellant's contention under this issue is the following discussion which
occurred during trial outside the presence of the jury:

 Defense: Your Honor, it came to my attention when I was hired on
this case that Mr. Jones when he first looked at the
offense report that it was a handwritten report; went
back to look at the report a second time and it was a
typewritten report. When he looked at it the first time, it
was a different colored truck given in the report as there
was in the second report. That would be the whole
purpose of his testimony. 

 Court: On the basis of his personal memory or his notes?

 Defense: On the basis of his, actually his notes.

 Court: Do you have your notes with you?

 Jones: They're outside the courtroom, Your Honor. 

 Court: And your client is willing to waive the attorney-client
privilege, I assume?

 Defense: Yes, Your Honor.

 Court: Well, that's an interesting question.

 Prosecutor: He's got to waive it as to all aspects. 

 Defense: Your Honor, may I have a moment?

 Court: Exactly. I think that if he waives the attorney-client
privilege you cannot pick and choose as to what you get
to say as to what areas you get to reveal. Once that
attorney-client privilege crack has been opened, it's a
gate, and they're allowed to now - because he's going
to have to waive it on the record. I'll give you a moment
to talk to him.

 Defense: I understand they'll be allowed to go into any
conversations as well.

 Court: You need to talk to your client about that and if he is
going to waive his attorney-client privilege then I want it
on the record, especially for the protection of Mr. Jones. 
What's your decision?

 Defense: Your Honor, I don't believe that it requires any type of
waiver. He's certainly not going to - at this point he's
not going to waive his attorney-client privilege.

 Court: Then I'm not going to let Mr. Jones testify. Mr. Jones
cannot get on the stand and testify as to work product
in order to impeach testimony and yet not have a waiver
of attorney. You can't have it both ways. You either get
it on or you go to the extent of even asking him did he
represent him or anything else. He has to do it. I'm not
going to put him in that position or this Court. 


Following this exchange, Jones testified during an offer of proof that when he reviewed the
State's file for the first time, it included a handwritten police report designating the truck as
white. Jones further averred that the second time he reviewed the file, the handwritten
report had been replaced with a typewritten version that described the truck as dark blue. 
According to Jones, the two reports were otherwise identical. 

 To preserve error for appellate review: (1) a party must make a timely, specific
objection; (2) the objection must be made at the earliest possible opportunity; (3) the
complaining party must obtain an adverse ruling from the trial court; and (4) the issue on
appeal must correspond to the objection made at trial. See Tex. R. App. P. 33.1(a); Dixon
v. State, 2 S.W.3d 263, 265 (Tex.Cr.App. 1998). An objection is sufficient to preserve error
for appellate review if it communicates to the trial court what the objecting party wants and
why the objecting party thinks himself entitled to relief, and does so in a manner clear
enough for the court to understand the objection at a time when it is in the best position to
do something about it. See Lankston v. State, 827 S.W.2d 907, 909 (Tex.Cr.App. 1992). 
But when it appears from the context that a party failed to fairly and effectively
communicate to the trial court the objection, its basis, or the relief sought, the appellant's
complaint has not been preserved. Id. 

 Here, appellant initially stated that he was willing to waive the privilege to allow
Jones to testify and "underst[ood] they'll [the State] be allowed to go into any conversations
as well." Later, however, appellant suggested "I don't believe it requires any type of
waiver." That general statement was insufficient to apprize the trial court of the basis of the
specific objection he now advances on appeal. In brief, appellant simply failed to inform
the trial court in an effective and timely manner of his objection and entitlement to relief;
thus, he preserved no error for review. Appellant's first issue is overruled.

 By his second issue, appellant asserts his "[t]rial counsel was ineffective in failing
to properly object to hearsay evidence that [he] had guns, and that Stacy Warden was
afraid that [he] 'would pull one on her.'" (2) We disagree. In determining whether counsel's
representation was so inadequate as to violate a defendant's Sixth Amendment right to
counsel, Texas courts adhere to the two-pronged test enunciated in Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see Hernandez v.
State, 726 S.W.2d 53, 57 (Tex.Cr.App. 1986). Appellant must first prove that counsel's
performance was deficient, i.e., that his assistance fell below an objective standard of
reasonableness. See McFarland v. State, 928 S.W.2d 482, 500 (Tex.Cr.App. 1996). If
appellant demonstrates deficient assistance of counsel, he must then affirmatively prove
prejudice as a result of the deficient assistance. Id. In proving prejudice, appellant must
demonstrate a reasonable probability that but for counsel's errors, the result of the
proceeding would have been different. Mitchell v. State, 68 S.W.3d 640, 642 (Tex.Cr.App.
2002). A reasonable probability is a probability sufficient to undermine confidence in the
outcome. Hernandez, 726 S.W.2d at 55. In other words, appellant must demonstrate that
the deficient performance prejudiced his defense. Mitchell, 68 S.W.3d at 642. Failure to
make the required showing of either deficient performance or sufficient prejudice defeats
the ineffectiveness claim. Garcia v. State, 887 S.W.2d 862, 880 (Tex.Cr.App. 1994), cert.
denied, 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995). The burden is on
appellant to prove by a preponderance of the evidence that counsel was ineffective. 
McFarland, 928 S.W.2d at 500.

 The adequacy of defense counsel's assistance is based upon the totality of the
representation rather than by isolated acts or omissions of trial counsel. Id. Furthermore,
appellate review of trial counsel's representation is highly deferential and presumes that
counsel's conduct fell within the wide range of reasonable and professional representation. 
Bone v. State, 77 S.W.3d 828, 833 (Tex.Cr.App. 2002). Although the constitutional right
to counsel ensures the right to reasonably effective counsel, it does not guarantee errorless
counsel, whose competency or accuracy of representation is to be judged by hindsight. 
Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex.Cr.App. 1993). Finally, any allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness. Thompson v. State, 9 S.W.3d 808, 813
(Tex.Cr.App. 1999). 

 The basis of appellant's argument under this issue stems from the testimony of
Shelley Cummings, Warden's roommate, who testified for the defense. Cummings, who
was also at the nightclub on the night of the offense, testified on direct examination that she
did not like appellant "[b]ecause of the way [she] felt he was treating Stacy and the things
that were going on between them." According to Cummings, she attempted to prevent
Warden from leaving the nightclub with appellant. By this issue, appellant specifically
claims his counsel was ineffective for failing to properly object to the following testimony:

 State: Okay. Now, you stated initially when you were asked by
defense counsel how you knew the Defendant and you
stated that he was a friend of yours. Okay. Then you
stated later that you don't like him and he's not a friend
of yours.

 Cummings: When I first met him, yes, we got along and we were
friends, but as I got to know him, no, I did not like him.

 State: Why didn't you like him?

 Cummings: Because of the way I felt he was treating Stacy
[Warden] and the things that were going on between
them.

 State: What was that?

 Defense: Your Honor, I'm going to object to relevance.

 Court: What's the relevance?

 State: Judge, I believe her line of testimony is she's not letting
her leave, and he [the defense attorney] was trying to
explore why she didn't want her to leave. I'm just trying
to explore that at this time.

 Court: All right. I'll let you go into it briefly. 

 State: Let me ask you the question. Do you remember --

 Cummings: Because from what Stacy [Warden] had talked to me
and the times I talked to her on the phone, she was
scared of him, and she was my best friend, and I didn't
want her in jeopardy.

 State: Why was she afraid of him?

 Cummings: I'm not real sure. She never said. I know they fought a
lot. She made comments about he had guns, and she
was afraid he would pull one on her. I don't know that
he ever did, but she was scared of him. 

 Defense: Your Honor, I'm going to object at this point. I think
we're getting into this line.

 Court: You need to move on.

 State: So she's your close friend and your roommate, and you
understand that she was afraid of the Defendant, but
she hasn't fully explained to you why or just things she's
shared --

 Defense: Your Honor, I'm going to object, asked and answered
and relevance.

 Court: It's a summation question. Move on.


 Initially, we acknowledge our authority to address an ineffective assistance of
counsel claim on direct appeal where the record is sufficient to prove that counsel's
performance was deficient. See Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex.Cr.App.
2000). Notwithstanding appellant's argument to the contrary, however, this record does
not present one of those rare cases allowing us to do so. As in the majority of instances,
the record here is simply undeveloped and cannot adequately reflect the failings of trial
counsel, if any. Thompson, 9 S.W.3d at 813-14. Furthermore, the portion of the record
reproduced above suggests that appellant's attorney was, in fact, alert and responsive to
the prosecutor's line of questioning. Indeed, he objected either to the State's question or
Cummings's response no less than three times in the space of one and a half pages of
reporter's record. In any event, on this record we are not in a position to fairly evaluate
appellant's claim and decline his invitation to do so. Appellant's second issue is overruled.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice



Do not publish.


 
1. We do not decide if the Lawyer-Client Privilege, Tex. R. Evidence 503 was
implicated.
2. With this issue, appellant complains that the objectionable testimony was hearsay. 
In the body of his argument, however, he asserts that it was also objectionable on
relevance grounds. See Tex. R. Evid. 403. 



den="false"
 UnhideWhenUsed="false" Name="Medium Grid 3 Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-0236-CV

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 



SEPTEMBER
17, 2010

 



 

KAREN RUTLEDGE,

  

                                                                                         Appellant

v.

 

CLINT ISLEY, Individually, CALVIN MICHELSON, Individually

 and CBRC PROPERTIES, LLC

  

                                                                                         Appellees

___________________________

 

FROM THE 207TH DISTRICT COURT OF COMAL
COUNTY;

 

NO. C2003-1175B; HONORABLE CHARLES R.
RAMSAY, PRESIDING

 



 

Memorandum
Opinion

 



 

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

            Karen
Rutledge (Rutledge) questions the trial courts directed verdict and appeals
from a judgment entered against her.  She
had sued Clint Isley, Calvin Michelson, and CBRC Properties (collectively
referred to as CBRC) for damages allegedly arising from construction defects
in a condomimium she bought from them. 
CBRC also appeals the trial courts refusal to award them attorneys
fees since they believed themselves to be prevailing parties.  We reverse the judgment and remand the
cause.  

            Background 

            Rutledge
purchased a condominium from CBRC Properties in July 2002.  Several months after doing so, she complained
of alleged defects in the construction of the property.  The defects included the continual leaking of
water into the abode from under walls and through window frames.  CBRC attempted to address the complaints, and
its efforts to repair the defects were unsuccessful in part.  Water or moisture still penetrated through
outside walls and a window.  This resulted
in growths appearing at one or more of the sites experiencing the
leakage.  Pictures admitted into evidence
also showed the presence of large coffee colored stains running atop baseboards
and up walls in the guest bedroom area. 
According to Rutledge, 

[i]n the window in the -- in the
guest bedroom/office, it is totally stained all the way, top, bottom, sides,
windowsill, carpet, everything.  The
blinds are covered.  It looks like
somebody threw a tub of coffee grounds at it. 
It has a smell.  When you go into
that room, its quite poignant.  

 

            Rutledge
also encountered electrical defects, or at least she so testified.  These included light switches failing to
activate lights until some time (in several instances, hours) after being engaged.  Once, the lights came on at night after she
had fallen asleep.  When they did, she
awoke suddenly, was startled, and screamed. 


            All the
defects, and conditions they created, went unremedied despite requests to have
them cured.  They also led Rutledge to
abandon the condominium, secure alternate living quarters, and incur expense
related to obtaining those alternate quarters. 


            Despite
evidence of the foregoing being proffered to the jury, CBRC moved for a
directed verdict.  They contended that
Rutledge had failed to present evidence of damages.  This was allegedly so because she tendered no
expert testimony about the costs of repairing the defects or the difference in
value between the condominium as represented by CBRC and as it actually was.  Such evidence purportedly was elemental to
her causes of action.  The trial court
agreed and found that theres not a proper measure of damages.  Thus, it granted an instructed verdict in
favor of CBRC and discharged the jury. 
It also refused to grant CBRCs request for attorneys fees as a
prevailing party per the sales agreement.

            Directed Verdict

            We initially
address whether the trial court erred in directing a verdict because there was
no proper measure of damages.  In doing
so, we note that the applicable standard of review is akin to that used in
assessing the legal sufficiency of the evidence.  City of
Keller v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005).  It requires us to examine the evidence in a
light most favorable to the party suffering the adverse judgment and decide
whether there is any evidence of probative value to raise an issue of material
fact.  Exxon Corp. v. Emerald Oil & Gas Co., L.C., No. 05-1076, 2009 Tex.
App. Lexis 113 at *23 (Tex. March
27, 2009).  That is, we credit favorable
evidence if reasonable jurors could do so and disregard contrary evidence
unless reasonable jurors could not.  City of Keller v. Wilson, 168 S.W.3d at 827.

            The record
before us discloses that Rutledge alleged various causes of action via her live
pleadings.  One implicated the Deceptive Trade
Practices Act and its provisions relating to deceit and breached warranty.  A claimant who successfully pursues such
claims normally is entitled to recover economic damages.   Tex. Bus. & Comm. Code Ann.
§17.50(b)(1) (Vernon Supp. 2009).  Within the latter measure
are compensatory damages for pecuniary loss, including costs of repair and
replacement.  Id. §17.45(11).  Within the category of pecuniary loss falls
the measure of damages known as loss of use. 
Under it, one may recoup expenses related to acquiring alternate means
to do that denied him by the deceptive trade practice.  For instance, the reasonable expense of
renting an automobile has been held to fall within the category.  Allied
Towing Service v. Mitchell, 833 S.W.2d 577, 585 (Tex. App.Dallas 1992, no writ)
(stating that the reasonable rental value of a substitute vehicle is sufficient
evidence of actual damages), accord Milt Ferguson Motor Co. v. Zeretzke, 827
S.W.2d 349, 358 (Tex. App.San Antonio 1991, no writ) (stating the same).  So too can it include the expense of having
to pay a mortgage on a second house acquired because the first was not
completed as promised.  Norwest Mortg., Inc. v. Salinas, 999
S.W.2d 846, 864 (Tex. App.Corpus Christi 1999, pet. denied). 


            Here, Rutledge testified that she lost the use of her home from
November 2006 through the date of trial due to the defects and the conditions
resulting therefrom, or at least a reasonable jury could have so interpreted
her testimony.  She further stated that
during the period she had to pay rent on an apartment for one year at $995 per
month, that then she had to make payments on a house at the rate of $1,545 per
month through trial, and that while those payments were being made she had to continue
paying the $878 monthly mortage payment on her condominium.  Like the defendant in Allied, CBRC said nothing about Rutledge being unqualified to
testify about the reasonableness of those expenses.  Nor did it object on the basis that they were
not indicative of the reasonable value of acquiring alternative living quarters
while the construction defects remained existent.  Additionally, we see little difference between
Rutledge having to acquire alternative living quarters and Mitchell (in Allied) having to acquire a rental car,
or Salinas (in Norwest) having to buy
another home due to a purported deceptive trade practice.  So, like the panels in those cases, we too
hold that the evidence proffered by Rutledge and illustrating what she paid to
live elsewhere  was some evidence of loss
of use and, therefore, of some actual damages. 
Given this, the trial court harmfully erred in granting the directed
verdict on the basis it did.  

            Finally,
because the appellate issue raised by CBRC (that is, whether it was a
prevailing party entitled to attorneys fees) was and is dependent upon our
affirming the directed verdict, we need not consider it.  Accordingly, the final judgment of the trial
court is reversed and the cause is remanded.

 

                                                                                    Brian
Quinn 

                                                                                    Chief
Justice